WILLIAM B. McCOMMON *et al.*

*v.*

LENOX H. McCOMMON *et al.*

*Filed at Ottawa, June 19, 1894.—Rehearing denied, October Term, 1894.*

1. WILLS—*proof of signature—knowledge of contents—presumption as to validity.* It is a general rule that on proof of the signature of the deceased, he will be presumed to have known and approved of the contents and effect of the instrument he has signed, such knowledge being essential to the validity of the will. But this presumption is liable to be rebutted by showing the existence of any suspicious circumstances.

2. Therefore, if the testator, from want of education, or from bodily infirmity, was unable to read, or if his capacity at the time of executing the instrument is a matter of doubt, or if the party who is materially benefited by the will has prepared it, or concocted its execution, or has been in a position to exercise undue influence, or if the instrument itself is not consonant with the testator's natural affections and moral duties, a more rigid investigation will be enforced, and

probate will in general not be granted, unless the court be satisfied by additional evidence that the paper propounded does really express the true will of the deceased.

3. WILLS—*contest of will—sufficiency of evidence to sustain the will.* On the contest of a will, no witness testified who was present when the same was read to or in the presence of the testator, but both the subscribing witnesses testified to the testator's admission that the will had been read over to him. They testified that they went to the office of an attorney at law at his request to act as witnesses to the will, etc., found the testator in the office. The attorney picked up the will, and asked the testator if he wished the witnesses to witness it, to which he replied in the affirmative. The attorney then asked the testator if the paper was his last will, to which he replied, it was. To the questions of the attorney, if the will was made at his request, and if the signature thereto was his, he answered in the affirmative. The attorney asked him if the will had been read to him, he said it had. The attorney called the attention of the witnesses to certain erasures and interlineations in the body of the will, and the testator said they were made at his request: *Held*, that there was sufficient evidence of the testator's knowledge of the contents of the will to sustain a verdict in favor of its validity.

4. SAME—*admissions of testator—evidence that the will was read to him.* The admissions by the testator that his will had been read over to him before he executed it, are competent evidence tending to prove that such was the fact.

5. SAME—*power of testamentary disposition.* A person of sound mind, and subjected to no restraint or undue influence, may dispose of his property by will as he sees fit. He may make those to whom he is bound by natural affection or moral duty the objects of his bounty, or he may dispose of his property to strangers. The mere fact that one disposition of his estate is made, rather than another, can, of itself, have no tendency to impeach the validity of his will. In other words, his testamentary capacity and his freedom from undue influence being conceded, the propriety or impropriety of his bequests is a matter with which courts and juries have nothing to do.

6. SAME—*evidence of undue influence and mental incapacity.* But where fraud, undue influence or want of testamentary capacity is charged, all the surrounding facts, including the bequest itself, its propriety or impropriety, its reasonableness or unreasonableness, in view of the situation, relations and circumstances of the testator, may be considered, as bearing upon the issues thus raised.

7. On the contest of a will for want of sufficient mental capacity, and for fraud and undue influence, the court instructed the jury as follows: "The only question that you are to try and determine is whether the

writing produced is, or is not, the will of C.; and in passing upon this question, you have nothing whatever to do with the propriety or impropriety of the bequests mentioned in said writing, as to whether said bequests were just or unjust, or as to whether such bequests should or not have been made," etc.: *Held,* that if the instruction had stood alone, it would have been error to give it, as withdrawing the attention of the jury from the consideration of the propriety or justness of the bequests in the will.

8.  SAME—*verdict of the jury on a contest—how far conclusive.*  The question of the capacity of a testator to make a will being preeminently a matter for the jury to determine, their verdict should not be disturbed, unless the court is able to say that it is clearly against the weight of the evidence.

WRIT OF ERROR to the Circuit Court of Jo Daviess County; the Hon. JOHN D. CRABTREE, Judge, presiding.

Mr. E. L. BEDFORD, for the plaintiffs in error:

The presumption of law arising from the formal proof of the execution of the will, that it had been read over and understood by the testator, is rebutted by the evidence. This presumption is liable to be rebutted, by showing the existence of any suspicious circumstances, and, therefore, if the testator, from want of education or from bodily infirmity, was unable to read; or if his capacity at the time of executing the instrument is a matter of doubt; or if the party who is materially benefited by the will has prepared it, or conducted its execution, or has been in a position calculated to exercise undue influence; or if the instrument itself is not consonant to the testator's natural affections or moral duties, a more rigid investigation will be enforced, and probate will not in general be granted, unless the court be satisfied by additional evidence that the paper propounded does really express the true will of the deceased.    1 Taylor's Ev. (8th Eng. Ed.), sec. 160, vol. 7, Text Book series, pp. 177, 178.

The doctrine is, and it seems to be based on strong grounds of reason and justice, that where a will is written, or procured to be written, by a person largely bene-

fited by it, it is a circumstance exciting stricter scrutiny, and requires stricter proof of volition and capacity. See 1 Jarm. Wills (4th Amer. Ed.) p. 42, and cases therein cited; *Waddington* v. *Buzley*, 47 N. J. Eq. 154; *Kelly* v. *Settegart*, 68 Tex. 13; 2 Pomeroy Eq. Jur., sec. 951; *Rusling* v. *Rusling*, 36 N. J. Eq. 607; *Denn* v. *Gibbons*, 22 id. 137; Redfield on Wills, 515; *Boyd* v. *Boyd*, 66 Pa. St. 283.

Messrs. D. & T. J. and J. M. SHEEAN, for the Hollands and Rees:

As to the presumption where the party drawing the will is made a large beneficiary, see 1 Jarman on Wills, 5th Am. Ed. 36; *Purdy* v. *Hall*, 134 Ill. 308; *Matter of Smith's Will*, 95 N. Y. 523; *Uhlich* v. *Muhlke*, 61 Ill. 499; *Epling* v. *Hutton*, 121 id. 556; *Waddington* v. *Buzley*, 46 N. J. Eq. 173; *Stirling* v. *Stirling*, 64 Md. 138.

As to undue influence, see *Yoe* v. *McCord*, 74 Ill. 44; *Roe* v. *Taylor*, 45 id. 492; *Allmon* v. *Pigg*, 82 id. 150; *Dickie* v. *Carter*, 42 id. 388; *Kimball* v. *Cuddy*, 117 id. 218.

There must be proof of influence amounting to coercion, and that the will was obtained by this coercion. "He must put his finger on the act, showing how it was wrought." *Williams* v. *Goude*, 1 Hagg. Eccl. 577, and *Gardner* v. *Gardner*, 22 Wend. 526.

It is not sufficient that a testator was in a condition susceptible to influence, and cared for by one whose interest might be to unduly influence him, as a wife with a dissolute husband. *Gardner* v. *Gardner*, 22 Wend. 526. It is not sufficient, to make out a charge of undue influence, that the testator gave the bulk of his property to those around him to the exclusion of others at a distance. *Remsen* v. *Brinckerhoff*, 26 Wend. 340. Nor that the testator was on his death bed surrounded by the beneficiaries of his will. *Bundy* v. *McKnight*, 48 Ind. 502. Nor that the testator was dependent on the one in whose favor the will was

made, in all his domestic and pecuniary affairs. *Bleecker* v. *Lynch*, 1 Bradf. 458. Nor that an old helpless man made his will in favor of a son who had for years cared for him and attended to all his affairs. *Elliott's Will*, 2 J. J. Marsh, 340.

The undue influence must deprive the testator of free agency, and be directly connected with the will; persuasion may be fairly used. A will procured by kindness will not be set aside for that reason, nor because the beneficiary held confidential relations or managed testator's property. *Rutherford* v. *Morris*, 77 Ill. 398.

Testator's declarations are not received to prove undue influence. *Reynolds* v. *Adams*, 90 Ill. 135; *Massey* v. *Huntington*, 118 id. 80.

It is not sufficient to show that a party benefited by a will had the motive and opportunity to exert such influence; there must be evidence that he did exert it. *Cudney* v. *Cudney*, 68 N. Y. 152.

Mere weakness of the understanding and defect of memory are not sufficient to invalidate a testamentary disposition. 1 Jarman on Wills, 57, note 1; *Burt* v. *Quisenberry*, 132 Ill. 385; 1 Redfield on Wills, 99 Pa. St. 9; 101 id. 11; *Yoe* v. *McCord*, 74 Ill. 39; *Turner* v. *Chessman*, 15 N. J. Eq. 243; *Campbell* v. *Campbell*, 130 Ill. 480.

Testamentary capacity exists when the testator is capable of attending to his ordinary business, and of acting rationally in the ordinary affairs of life, even though the mind and memory at the time of making the will are not as good as at a former period. *Bice* v. *Hall*, 120 Ill. 601.

It is a rule of law that a person who is capable of transacting ordinary business is also capable of making a valid will. A test usually recognized is, the party must be capable of acting rationally in the ordinary affairs of life, so that he may comprehend what disposition he may wish to make of his property, and be able to select the subjects of his bounty. Nothing more is required, and so the author-

ities in this State uniformly hold.    *Freeman* v. *Easly*, 117 Ill. 321; *Rutherford* v. *Morris*, 77 id. 398; *Meeker* v. *Meeker*, 75 id. 260; *Schneider* v. *Manning*, 121 id. 377; *Guild* v. *Hull*, 127 id. 525.

It is not essential that the testator should be capable of managing business generally; it is enough if, when making his will, he understands what he is doing.    Jarman on Wills, 38 (bottom page 58, note).

Mr. W. SPENSLEY, for the appellees, defendants in error:

"The allegation of undue influence is tantamount to that of fraud, and, like it, the burden of proving such fact rests upon the party alleging it."    *Roe et al.* v. *Taylor*, 45 Ill. 485.

It can not be presumed that because Rees had an opportunity to influence Cornman he did so.

We believe that no authorities can be found which hold that because a beneficiary under a will drew the same, the will is void.    The most that the courts hold in such cases is that it is a circumstance exciting stricter scrutiny, and it requires strict proof of volition and capacity.    The case at bar was fairly submitted to the jury, and the record shows that the court exercised great care in the trial of the same.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought to contest the will of George Cornman, deceased.    Cornman died September 13, 1890, in Jo Daviess county, where he had lived for many years, leaving an estate, consisting of both real and personal property, of the value of about $23,000, and leaving no widow or descendants, he having never been married. At the time of his death he was about seventy-seven years of age.    His will, which bore date November 3, 1887, was duly admitted to probate, and it is now contested on the

grounds, (1) that at the time of its execution, Cornman was so weak and feeble in mind and memory as to be incapable of comprehending who were the proper objects of his bounty and of making a just disposition of his estate; (2) that the execution of the will was procured by undue and improper influences; and (3) that the will was not read over to the testator, and that he was not informed of its provisions at the time he executed it. The beneficiaries under the will appeared and answered, and an issue having been submitted to a jury, whether the writing produced was the will of Cornman, the jury returned their verdict finding that the writing was the will of the testator, and the court thereupon, after denying the contestants' motion for a new trial, entered a decree dismissing the bill for want of equity. To reverse that decree, the contestants now bring the record to this court by writ of error.

The next of kin of Cornman at the date of the will were a sister, who has since died, and the children of deceased brothers and sisters, all being residents of the State of Pennsylvania. Cornman himself seems to have been a native of that State, and to have emigrated therefrom early in life, his residence since that time having been in Jo Daviess county, Illinois, and there he accumulated the estate which he left at his death. For several years prior to his death, he made his home with Edwin Holland, the father of the residuary devisees named in the will, and for a considerable time prior to the execution of his will, and down to the time of his death, Moses Rees, one of the executors named in the will, and a legatee thereunder, seems to have been the testator's confidential attorney, and to have had charge and supervision of most of his business and pecuniary affairs. The evidence shows, and on this point there is no dispute, that the will is in the handwriting of Rees; that it was executed at his office; that he selected and procured the attendance of the attesting witnesses, and superintended the entire matter of its execution.

The will, after making provision for the payment of the testator's debts and funeral expenses, disposes of his estate in the following manner:

"Second.  I give and bequeath to my sister, Catherine Low, of Carlisle, Pennsylvania, the sum of fifty dollars each and every year during her natural life, the first fifty dollars to be paid as soon after my decease as my executors shall find convenient, and thereafter the said sum of fifty dollars on or about the first of January in each and every year during her natural life, and I desire that my executors shall invest so much of my estate in good security, as that the interest on the same shall pay said fifty dollars, and, after her decease, said amount is to be distributed as hereinafter named.

"Third.  I give, devise and bequeath to my friend, Moses Rees, (and being one of my executors), the sum of twenty-five hundred dollars, to be paid him within six months after my decease, if found convenient by my executors.

"Fourth.  I give, devise and bequeath to Florence Oeta Holland, Nevada W. Holland and Nora Holland, (children of Edwin and Hattie Holland, of Long Hollow, in town of Elizabeth, in Jo Daviess county), all the rest and residue of my estate, of what nature and kind whatsoever, to be shared by them equal and alike, that is, one-third to each, including the amount invested, the interest of which to be paid to my sister, which amount, after her decease, is to be divided between them.  The share of each of them to be paid to them as soon after he or she becomes of age and after my decease as shall to my executors be convenient. And I desire that so much of the income as I have given to each of the children, to-wit: Florence O., Nevada W., and Nora Holland, if either of them should not be of age at my decease, shall be applied for his or her support and education, as shall be needful and proper, by my executors and by their guardian.

"And I hereby nominate, constitute and appoint my friend, Moses Rees, of Galena, and my friend, George Cubbon, of Elizabeth, all in said county of Jo Daviess, jointly and severally, to be my executors of this my last will and testament, and I do by these presents give my said executors full power and authority to grant, alien, bargain, sell and convey all the lands of which I die seized, giving a good and sufficient deed of conveyance for the same. And also with full power to carry out all needful acts of this, my last will and testament, and I desire that my said executors shall not be required to enter into bonds, the bonds being waived."

The evidence adduced at the trial, bearing upon the question of the testamentary capacity of the testator at the time the will was executed, is very voluminous and quite conflicting. The fact is not disputed that, being advanced in years, he was laboring under the infirmities, both physical and mental, usually incident to old age, but as to whether he still retained that degree of mental capacity necessary to render him capable of making a valid will, the witnesses are greatly at variance. Any attempt on our part to analyze or discuss at length the evidence bearing upon this question, would be of no essential benefit to the parties. The question presented is purely one of fact, and it was, therefore, pre-eminently a matter for the jury to determine, and their verdict should not be disturbed, unless we are able to say that it is clearly and manifestly against the weight of the evidence. After having carefully considered the evidence in the voluminous record before us, we are unable to find any just ground, so far as this question is concerned, for holding that the jury have not reached a just and proper conclusion.

It is also urged that the evidence is insufficient to warrant a finding that the testator knew the contents of the will at the time he executed it. The contention is, that the circumstances attending the execution of the will were such as

to overcome the usual *prima facie* presumption that a party signing and executing an instrument knows and approves of its contents, so as to throw upon the proponents of the will the burden of making affirmative and satisfactory proof of such knowledge on the part of the testator, and it is insisted that such proof was not furnished. The circumstances alluded to are the enfeebled condition of the testator's mental faculties, his want of education and want of ability to read with facility, the fact that the disposition of his property made by his will was not consonant with the testator's natural affections, and, more especially, the fact that the person who drafted the will and superintended its execution, was and for several years had been the testator's confidential attorney and agent, and was by the will given a legacy of $2,500, and was appointed executor and relieved from giving bonds as such.

It is true, the law, in the absence of all evidence, will presume that a person who executes a will or other instrument, does so with knowledge of its contents, but this is a presumption which will readily yield to evidence tending to show that such was not the fact. *Keithley* v. *Stafford*, 126 Ill. 507; *Purdy* v. *Hall*, 134 id. 298. As said by Taylor in his treatise on the law of evidence, "It is a general rule that, on proof of the signature of the deceased, he will be presumed to have known and approved of the contents and effect of the instrument he has signed; such knowledge being essential to the validity of the will. This presumption, however, is liable to be rebutted by showing the existence of any suspicious circumstances; and, therefore, if the testator, from want of education or from bodily infirmity, was unable to read, or if his capacity at the time of executing the instrument is a matter of doubt; or if the party who is materially benefited by the will has prepared it, or conducted its execution, or has been in a position calculated to exercise undue influence; or if the instrument itself is not consonant with the testator's natural

affections and moral duties, a more rigid investigation will be enforced, and probate in general will not be granted, unless the court be satisfied by additional evidence, that the paper propounded does really express the true will of the deceased." 1 Taylor on Evidence, section 160, and cases cited in notes.

A similar view of the law was expressed by this court in *Purdy* v. *Hall*, *supra*, where we said: "The doctrine is, and it seems to be based upon strong grounds of reason and justice, that where a will is written or procured to be written by persons largely benefited by it, it is a circumstance to excite a stricter scrutiny and requires stricter proof of volition and capacity. And the increased strictness of scrutiny and proof required in cases of this character is such as to give full and entire satisfaction to the court and jury that the testator was not imposed upon, but that he knew what he was doing and the disposition he was making when he made his will."

But while the rule is as above stated, we are of the opinion that there was evidence before the jury tending to show affirmatively that the testator knew the contents of the will at the time he signed it, at least sufficient to make the question one of fact for the jury. No witness testified who was present when the will was read to or in the presence of the testator, but both of the subscribing witnesses testify to the testator's admission that the will had been read over to him.

Their testimony is, in substance, that they went to Rees' office at his request to act as witnesses to the will, and found Cornman in the office sitting near Rees' desk. Rees then picked up the draft of the will which was lying on the desk, and asked Cornman if he wished the witnesses to witness it, to which Cornman replied in the affirmative. Rees then asked Cornman if the will was his last will and testament, to which the latter replied that it was. Rees then asked him if the will was made at his request, and if the

signature thereto was his signature, to both questions Cornman answered in the affirmative. Rees then asked Cornman if the will had been read over to him, and he answered that it had. Rees then drew the attention of the witnesses to certain erasures and interlineations in the body of the instrument, and asked Cornman if those alterations were made at his request, and he answered that they were. The witnesses then subscribed their names to the will as attesting witnesses. The alterations referred to consisted of striking out the word "hundred" and inserting in lieu thereof the word "fifty" in several places in the clause of the will which gives an annuity for life to the testator's sister.

These admissions by the testator, that the will had been read over to him before he executed it, were certainly competent evidence tending to prove that such was the fact, and it was for the jury to determine the weight to be given to it, in view of all the circumstances appearing in evidence. And as they have determined the issue thus submitted to them in the affirmative, we can not say that their verdict is not warranted by the evidence.

Complaint is made by counsel for the contestants of the will of the ruling of the court in giving to the jury, at the instance of the proponents, the following instruction:

"The only question that you are to try and determine is, whether the writing produced in evidence is or is not the will of George Cornman; and in passing upon this question, you have nothing whatever to do with the propriety or impropriety of the bequests mentioned in said writing, or as to whether said bequests were just or unjust, or as to whether such bequests should or should not have been made. The maker of a will is his own judge as to its justness and fitness, and he has full and complete power under the law to dispose of his property as he sees fit, and to deprive his relatives of the enjoyment of any part or all of his estate, even though they may be poor and in needy circumstances. And if you believe from the evidence, that

at the time George Cornman executed said writing he was capable of transacting ordinary business, and was under no constraint, then you should find that the said writing is the will of said George Cornman.''

It is doubtless the rule, that a person of sound mind and memory, and subjected to no constraint or undue influence, may dispose of his property by will as he sees fit. He may make those to whom he is bound by ties of natural affection or moral duty the objects of his bounty, or he may bestow his entire property upon strangers. The mere fact, that one disposition of his estate is made rather than another, can, of itself, have no tendency to impeach the validity of his will. In other words, his testamentary capacity and his freedom from undue influence being conceded, the propriety or impropriety of his bequests or devises is a matter with which courts and juries have nothing to do. But where fraud, undue influence or want of testamentary capacity is charged, all the surrounding facts, including the bequest itself, its propriety or impropriety, its reasonableness or unreasonableness, in view of the situation, relations and circumstances of the testator, may be considered, as bearing upon the issue thus raised.

On this subject, Mr. Redfield says: ''Where the will is unreasonable in its provisions, and inconsistent with the duties of the testator, with reference to his property and family, or what the civilians denominate an inofficious testament, this, of itself, will impose upon those claiming under the instrument the necessity of giving some reasonable explanation of the unnatural character of the will, or, at least, of showing that its character is not the offspring of mental defect, obliquity or perversion.'' 1 Redfield on Wills, 516. In *Patterson* v. *Patterson*, 6 Serg. & Rawle, 55, the question being as to the validity of a will, Chief Justice Gibson said: ''Where a will is impeached for imbecility of mind of the testator, together with fraudulent practices by the devisees, the intrinsic evidence of the will itself, arising from

the unreasonableness or injustice of its provisions, taking into view the state of the testator's property, family, and the claims of particular individuals, is competent and proper for the consideration of the jury." So, in *Clark* v. *Fisher*, 1 Paige, 171, the court, upon the authority of the case last cited, held that, in forming an opinion of the state of the testator's mind, it is proper to take into consideration the reasonableness of the will in reference to the amount of his property and the situation of his relatives. Also, in *Lynch* v. *Clements*, 24 N. J. Eq. 451, it was held, that the inequality of the provisions of a will can not, of themselves, be adequate to prevent a court of equity from giving aid to carry out its provisions, but they may suffice to call for explanation from those in whose favor they are made. To similar effect, see *Lamb* v. *Lamb*, 105 Ind. 456; *Bittner* v. *Bittner*, 65 Penn. St. 347; *Kevil* v. *Kevil*, 2 Bush, 614; *Kimball* v. *Cuddy*, 117 Ill. 213.

The instruction in this case is not very clear or felicitous in its language, and is susceptible of two constructions. One is, that in determining whether the instrument produced in evidence was or was not the will of Cornman, the jury were not called upon to decide as to the propriety or impropriety of the bequests thereby made, or as to whether such bequests were unjust or not, or should or should not have been made. That this is the way in which the draftsman of the instruction intended it to be understood is probable from the tenor of the part of the instruction which follows, viz.: that the maker of a will is his own judge as to its justness or fitness, and has full and complete power under the law to dispose of his property as he sees fit, and to deprive his relatives of the enjoyment of any part of his estate, even though they may be poor and in needy circumstances. If such is the meaning of the instruction, and if the jury were likely to so understand it, it would not seem to be subject to any just criticism.

But another meaning of the instruction, which seems to us to be the most obvious one, is, that in determining whether

the instrument in question is the will of the testator—a question which necessarily involves the subsidiary questions, whether the testator, at the time he executed the instrument, was in possession of testamentary capacity, or was subject to undue influence, or was the victim of fraud—the jury should not consider the propriety or impropriety of the bequests, or whether they were just or unjust, or whether they should or should not have been made, as bearing upon those questions. If the instruction had stood alone, this, most probably, is the meaning in which the jury would have understood it, and its effect, therefore, would have been to withdraw from their consideration material and competent evidence, in determining whether the instrument produced was the will of the testator or not.

But as several instructions were given at the instance of the contestants which must have had the effect of correcting any misapprehension on this subject in the minds of the jury, the error in the above instruction must be deemed to have been obviated. Thus, among the instructions given for the contestants were the following:

"In considering the ability of George Cornman to make the will in question, the jury should take into consideration the evidence produced in this trial, bearing on the amount and nature of his property, the various relatives and friends, if any, to whom he might desire to distribute his property by will, and the ability of his mind to remember these matters, and to enable him to make a comprehensive and intelligent disposition of his estate among them, at the time the will in question was signed.

"The jury are instructed by the court, that in considering the ability of the testator, George Cornman, to make the will in question in this suit, they should take into consideration the evidence and circumstances in evidence in the case, bearing on the amount and nature of his property, the various relatives and friends, if any, to whom he might desire to distribute his property by will, and in consideration of these matters, they should believe from the evi-

·dence that he was possessed of a sufficiently sound mind and memory to remember said persons and property, and to be able to make an intelligent disposition of his property among them, if he desired to do so; and if the jury believe from the evidence that the said George Cornman was not possessed of a sufficiently sound mind and memory at the time the will in question was signed, to enable him to so remember his property, and the relatives or persons to whom he might desire to distribute the same by will, at the time the will in question was signed, then the jury should find that the will in question is not the will of George Cornman, deceased.''

If there was any impropriety or injustice in the bequests made by Cornman in his will, they consisted of giving his estate to strangers to his blood, to the exclusion of his own relatives, and by these instructions the jury were directed to take into consideration the claims of his relatives and friends, and the nature and amount of his estate, in determining whether he had capacity to make a will. With these instructions before them, the jury could not have understood that the court intended, by the instruction given at the instance of the proponents of the will, to withdraw from their consideration the propriety or justice of the bequests in the will, in determining whether the paper produced was the will of the testator. We are of the opinion that the error in the instruction given for the proponents, if there was any, was obviated by the instructions given for the contestants, and that there is nothing in that instruction which calls for a reversal of the decree.

Some other points are pressed upon our attention, in respect to which we do not deem it necessary to do more than to say, that we have given them patient consideration, and do not regard any of them as well taken. After carefully examining the record, we have reached the conclusion that it contains no error for which the decree of the Circuit Court should be reversed, and it will accordingly be affirmed.

*Decree affirmed.*