ACHSAH GOLDY CHENEY *et al.*

*v.*

CLARA J. GOLDY *et al.*

*Opinion filed February 21, 1907.*

1. WILLS—*question whether the court erred in directing verdict does not involve weight of evidence.* Whether the court erred in directing the jury to find for the defendants to a bill to contest a will does not involve any question as to the preponderance of the evidence or the credibility of witnesses or the force of evidence tending to impeach the witnesses, but only whether there was any evidence fairly tending to sustain the allegations of the bill with respect to its charges of undue influence and want of testamentary capacity.

2. SAME—*when verdict should not be directed.* A verdict for the defendants to a bill to contest a will for undue influence and want of testamentary capacity should not be directed, where there is evidence that the testator, at the time of making the will, was very old and suffering from a disease which weakened his mental faculties, had been taking morphine to quiet his pain, was in delirium or coma much of the time, and that, although a man of education, he made crosses for his signature to the will, which disposed

of his entire estate to strangers to the blood and to the exclusion of his relatives, none of whom were present or knew of his illness, and where the beneficiaries of the will were the children of the woman with whom the testator was boarding and who was active in procuring the will to be made.

3. SAME—*undue influence need not be necessarily that of the beneficiaries.* The undue influence which will invalidate a will need not be necessarily· exerted by the beneficiaries but may be exerted by a third person, such as the mother of the beneficiaries, and proof of such influence may be wholly circumstantial or inferential.

4. SAME—*contestants may prove friendly relations with the testator.* Evidence tending to show that friendly relations existed between the testator and some of his relatives is competent, as bearing upon the issues, where a will disposing of the testator's property to strangers to his˙ blood is sought to be set aside for undue influence or want of testamentary capacity.

5. SAME—*declarations inconsistent with will cannot be shown.* Declarations by the testator, at different periods of his life, with reference to his intended disposition of his property, are admissible in evidence if consistent with the provisions of the will but not if inconsistent therewith, except in so far as they may have a tendency to show the mental condition of the testator.

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

THERON DURHAM, (HENRY S. OSBORNE, and SAMUEL W. PACKARD, of counsel,) for appellants.

LACKNER, BUTZ & MILLER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from the circuit court of Cook county to reverse a decree of that court dismissing a bill by appellants and others against appellees to contest the last will and testament of Isaiah Goldy, deceased.

Isaiah Goldy, a bachelor, eighty-three years of age, died in the city of Chicago on the 25th day of February, 1905, and by his alleged last will and testament of date February 22, 1905, bequeathed and devised his entire estate, valued at $75,000, unto Elsie Rose Goldy and Walter Isaiah Goldy,

children of Mrs. Clara J. Goldy. Though bearing the same family name the devisees and legatees were not of kin to the testator. The bill alleged that Achsah Goldy Cheney and thirty-one nephews, nieces, grand-nephews and grand-nieces, the complainants, were all of the heirs-at-law and next of kin of the deceased; that said Isaiah Goldy was at the time of executing the supposed will of unsound mind and memory and wholly incapable of making any just and proper distribution of his property; that Clara J. Goldy and Elsie Goldy unduly influenced the deceased in the execution of the will; that said Elsie Rose Goldy and said Walter Isaiah Goldy, the two sole legatees in said pretended will, were not related in any way to the said Isaiah Goldy nor to any of the complainants, and that said Clara J. Goldy, mother of the legatees and devisees, both of whom were minors, conspired with George N. Sandberg to secure the entire estate of the deceased for the devisees in the will. An issue of law was made up as provided by the statute and submitted to a jury whether the writing produced was the will of the testator or not. Appellees introduced in evidence the certificates of oaths of the subscribing witnesses at the probate of the will, June 30, 1904, and both parties offered evidence in support of and against the allegations of the bill. At the close of all the evidence the trial court peremptorily instructed the jury to find the issues in favor of appellees.

It is urged by appellants that the court erred in giving the peremptory instruction to find for the proponents of the will. The determination of the question whether the court properly gave the instruction does not involve any question as to the preponderance of the evidence or the credibility of the witnesses, or the force to be given to the evidence having a tendency merely to impeach the veracity of the witnesses. The only question is, was there evidence fairly tending to prove the allegations of the bill that the deceased was at the time of the execution of the will of unsound mind and memory or that he was unduly influenced in the execution of the

will. *Woodman* v. *Illinois Trust and Savings Bank,* 211 Ill. 578, and cases there cited.

In August, 1904, the deceased, then of the age of eighty-three years, went to the home of Clara J. Goldy, at 567 North Clark Street, in the city of Chicago, to board, paying for his board while there the sum of six dollars a week. The evidence tends to show there was not any relationship whatever between Mrs. Goldy and her children and the decedent. On February 4, 1905, the deceased seriously injured his leg and was taken to his room in Mrs. Goldy's flat, where he remained in bed until he departed this life, three weeks later. None of his relatives were in Chicago nor were they notified of his illness. Clara J. Goldy, the mother of the two beneficiaries in the will, (one a boy ten years of age, the other a girl of seventeen,) testified that on Sunday afternoon before the death of Mr. Goldy he was seized with violent pains and began to scream and throw up his hands, and said, "Oh, my God! this is death! this is surely death!" that she asked him if she should ship his body back east, and he told her, "No; do as you think best; I shall leave it all to you;" that she said, "You have made your will?" and he replied, "No, and I fear it is too late," but that she assured him it was not and that he could "send for some one when this paroxysm is over," and that he told her to do so at once. Mrs. Goldy testified she then sent her daughter to a neighbor to inquire for some one competent to make a will, and not finding the person sought, the daughter went to get Mr. Sandberg, a former employer of hers, who was a notary public, and that in response to her request Mr. and Mrs. Sandberg and Mr. Julin, the father-in-law of Sandberg, all of whom were strangers to Mr. Goldy, came and were introduced to him on their arrival. Sandberg claimed to be unable to write a will, and his father-in-law, Mr. Julin, a real estate agent, was brought for that purpose. Julin testified he stayed with the deceased about one-half hour and talked with him about the disposition of his property by will, and after receiving

directions from him as to how it should be written he went to the room where Mrs. Goldy was waiting, and asked his daughter, Mrs. Sandberg, to write the will as he dictated it. The witnesses present testified the deceased was asleep when they had finished drawing the will; that they waited until after ten o'clock that night, but as he was still sleeping decided to wait until the next morning to have the will signed. It was further testified to on behalf of appellees that the next morning, February 22, 1905, Mrs. Goldy handed the will to deceased and he started to read it, but returned it to her to read for him, which she did. She testified he said it was all right, and signed it by making three crosses at the foot thereof. Mr. Goldy was very weak at that time, and when he so signed the instrument Mrs. Goldy held his arm and assisted him in making the crosses. Elsie Goldy, the daughter, had possession of the will the night before it was signed and kept it until the next morning, and then gave it to her mother when Mr. Goldy inquired for it. Mrs. Goldy requested Mrs. Hurlock to be a witness to the will, and sent her daughter, Elsie, to get a brother of Mrs. Goldy to be the other witness.

Dr. Manierre, a witness in behalf of the proponents, who attended the deceased during his last illness, testified that he called on him on the 19th and 21st of February and found him having severe pains. "He would have a paroxysm lasting some little time, then a rest." The doctor gave him some morphine on the 19th. On the 21st he gave some morphine tablets and left a prescription with Mrs. Goldy for one-quarter grain morphine pills. On the 22d, the day the will was executed, the doctor visited him three times on account of the severe pain he was suffering, and at three o'clock on the morning of February 23 Elsie Goldy called at the doctor's office for medicine for pain deceased was having, and he gave her some morphine tablets to be given him for quieting the pain. The doctor testified the cause of Mr. Goldy's death was an enlargement and inflammation of the

prostate gland, and inflammation of the bladder, and uræmia. The doctor further testified: "The last two days the deceased kept repeating over some phrase like 'Applonia' or 'Abolonia.' The man was, of course, incapable, as near as I could judge, of conducting ordinary business, but I say he was capable of making a will because that is extraordinary, as I understand it, in the eyes of the law. He could answer any question up to a certain point very clearly. It was just a matter of speaking to him so that he comprehended it. He was very deaf."

· The evidence further shows that uræmia is the absorption of the contents of the urine into the blood, poisoning the blood. It affects the mind, produces delirium and coma, and weakens the resistance of the mental faculties; and also that morphine taken from day to day has a similar effect. I. M. Ridlehuber testified that he saw the testator on Saturday before the will was signed on Monday and found him delirious; that he saw him again on Monday night, the day on which the will was signed, and that he was then "delirious, raving and nude;" that the witness assisted in quieting him to some extent, and went to his (witness') home for a short time and then returned, and found deceased a little more quiet "but talking all the time;" that he said a great many things to which the witness paid no attention, and that he used an expression that sounded to the witness like "I axie her," many times. This same witness saw Mr. Goldy on the afternoon before that, and he was in about the same condition and seemed to be delirious. It was further developed by the evidence that Mr. Goldy was well educated and could write,—in fact he was a business man who had transacted many business affairs and accumulated his fortune thereby. The proof relied on by proponents shows his signature was made to the will by making three crosses, (X X X) and that these crosses were made while Mrs. Goldy held his arm and directed its movements. His name had not then been written to the will. Later, on the same

day but not in the presence or with the knowledge of the deceased, one Mabel Sandberg wrote the word "Isaiah" before the three crosses and the word "Goldy" after the crosses. None of his relatives were in Chicago at this time, and among those who took an active part in procuring the execution of the will were Mrs. Goldy (his landlady) and her daughter, the latter being one of the two beneficiaries in the will.

Taking this evidence as true, and all the reasonable inferences and intendments to be drawn therefrom, it cannot be seriously contended there was not any evidence before the jury fairly tending to establish the allegations of the bill that the decedent was, at the time he signed the will, of unsound mind and memory and that he was unduly influenced in the execution of the same. "Where a will is written, or procured to be written, by a person largely benefited by it, such circumstance excites stricter scrutiny and requires stricter proof of volition and capacity. The proof required in such cases must be such as to fully satisfy the court or jury that the testator was not imposed upon, but knew what he was doing and what disposition he was making of his property when he made his will. The active agency of the beneficiary of a will in procuring it to be drawn, especially in the absence of those who have at least equal claims upon the justice of the testator, and where the testator is enfeebled by old age and disease, is a circumstance which indicates the probable exercise of undue influence. Where the mind is wearied and debilitated by long continued and serious and painful sickness it is susceptible to undue influence and is liable to be imposed upon by fraud and misrepresentation." (*England* v. *Fawbush,* 204 Ill. 384.) Proof of undue influence may be wholly circumstantial and inferential, and the influence may be that of a third person as well as that of direct beneficiaries; that is, if the will was the result of undue influence on the part of Mrs. Goldy, the mother of the beneficiaries, this would invalidate the will.

Complaint is made that the court erred in excluding proper testimony offered on behalf of the appellants tending to show that friendly relations existed between the deceased and some of his relatives. We have held such evidence competent as bearing upon the issues where a will is sought to be impeached for mental incapacity of the testator or undue influence practiced upon him. *McCommon* v. *McCommon,* 151 Ill. 428; *Piper* v. *Andricks,* 209 id. 564.

Appellants also offered evidence, which was held inadmissible by the trial court, of declarations made by the deceased to the effect that he intended to divide his property among his relatives in the east. Declarations at different periods of life as to the views and intentions of the testator in the disposition of his property may be introduced if consistent with the provisions of the will, but are not competent to be considered to invalidate a will as having been made under undue influence. (*Compher* v. *Browning,* 219 Ill. 429.) Declarations may be competent if such as have a tendency to show mental condition of the testator, but it is not contended that any such declarations were excluded.

The contention of the appellants that the court erred in not allowing Walter S. Goldy to testify as to facts occurring after the death of said Isaiah Goldy is not presented for consideration. The testimony of this alleged witness, or what questions were propounded to him, does not appear in the abstract of the testimony, nor does the abstract show that Walter S. Goldy was called or testified as a witness.

The trial court erred in giving the peremptory instruction to the jury and in ruling as to the admissibility of evidence, as indicated herein. The decree dismissing the bill must be, and accordingly is, reversed and the cause remanded to the circuit court of Cook county for further proceedings not inconsistent with the views here expressed.

*Reversed and remanded.*