NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220924-U

NO. 4-22-0924

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 23, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JUNE BRUNTON, | ) | Appeal from the |
|     Petitioner-Appellant, | ) | Circuit Court of |
|     v. | ) | McLean County |
| ROBERT KRUGER, as Trustee of the Helen P. Kruger | ) | Nos. 11P113 |
| Trust Dated December 7, 2005 and as the Executor of the | ) | 11P245 |
| Estate of Helen P. Kruger; as Trustee of the Gordon J. | ) | |
| Kruger Trust Dated December 7, 2005 and as the | ) | |
| Executor of the Estate of Gordon J. Kruger and | ) | |
| Individually; DAVID G. KRUGER; GORDON J. | ) | |
| KRUGER, JR. a/k/a JAMES KRUGER; MARY B. | ) | |
| KRUGER, a/k/a MARY I. KRUGER; CLINT STEPHEN | ) | |
| KRUGER; BRIAN DALTON KRUGER; DEBRA J. | ) | |
| KRUGER; and UNKNOWN DESCENDANTS of David | ) | Honorable |
| G. Kruger and Robert Kruger, | ) | Scott Kording, |
|     Respondents-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, finding the trial court did not err when it denied
petitioner's motion to find a presumption of undue influence.

¶ 2    In 2011, petitioner, June Brunton, initiated this suit contesting testamentary
instruments executed by her parents (decedents), Gordon J. Kruger and Helen P. Kruger. Under
the challenged instruments, petitioner was essentially disinherited. At trial, petitioner argued
decedents were unduly influenced to alter their previous wills by their late accountant, Eugene

Striegel, and consequently, Striegel's actions in procuring decedents' wills and trust agreements should be imputed to respondents, Robert Kruger, David G. Kruger; Gordon J. Kruger Jr. a/k/a James Kruger (James), Mary B. Kruger a/k/a Mary I. Kruger, Clint Stephen Kruger, Brian Dalton Kruger, Debra J. Kruger, and the unknown descendants of Robert and David. Following a 15-day trial, a jury considered the will contests and ruled in respondents' favor.

¶ 3        Petitioner appeals, arguing the trial court abused its discretion when it denied her motion to find a presumption of undue influence by failing to impute Striegel's alleged misrepresentations to Robert. We affirm.

¶ 4                                I. BACKGROUND

¶ 5                                A. Procedural History

¶ 6        In March 2017, petitioner filed her second amended complaint contesting the wills and trusts of decedents. In the complaint, petitioner alleged decedents had diminished mental capacities at the time they executed their wills and trusts in December 2005. The complaint further alleged Striegel, decedents' late accountant, asserted undue influence over decedents at the time they executed their 2005 wills and trusts, where Striegel "directly procured the new Wills and Trust" for the purpose of increasing Robert's testamentary benefit. In July 2017, respondents filed an answer and counterclaim to petitioner's second amended complaint.

¶ 7        In May 2021, the matter proceeded to a jury trial. Below, we summarize the evidence presented at trial relevant to the disposition of this appeal.

¶ 8                                B. Jury Trial

¶ 9                                1. *The Estate Planning Process*

¶ 10       In February 2011, Gordon died. His wife, Helen, predeceased him in 2009. They were survived by one daughter, petitioner, and three sons: Robert, James, and David.

¶ 11 In November 1992, decedents executed testamentary documents which provided, whenever the surviving spouse died, all shares of stock in their farm, K-Farms, Inc., would be distributed as follows: 40% to Robert, 30% to James, 20% to David, and 10% to petitioner.

¶ 12 At some point, decedents' plan regarding the distribution of their estates changed, and decedents consulted with the accounting firm of Striegel, Knobloch & Company, LLC. They provided Striegel with confidential information, including information about their family, income, assets, and estate planning goals. Striegel, in turn, provided estate planning information to Thomas Barger, the attorney who prepared decedents' trust documents and "pour over" wills.

¶ 13 In July 2005, Striegel sent a letter via facsimile to Barger indicating he "met with [decedents] to go over various tax matters *** and Gordon asked that [Striegel] review [his] observation of the first draft of the Living Trusts with them." According to the letter, decedents found petitioner's bequest of $500,000 unacceptable and "[would] advise of the desired amount at a later date."

¶ 14 In August 2005, Striegel faxed a letter to decedents which stated the following, in pertinent part:

> "From our telephone conversation last Thursday, I understand you want to 'leave [petitioner] an income stream for her life and not any lump sum bequest'. In this regard, we discussed K-Farms, Inc. employment, trusts with life estates, and seemed to conclude the easiest and most efficient way to accomplish your request was to eliminate [petitioner] from the Will and recite 'you have provided for your daughter by other means' "

The letter proposed that, following decedents' deaths, petitioner could " 'put' her shares to K-Farms, Inc.," which would allow petitioner to sell her shares back to the farm for "$500,000 paid over 20 years." Striegel's letter continued, "[t]his appears the simplest method of accomplishing your intentions and this leaves [petitioner] nothing from your Estates and provides her with only the ability to cash out the previous gifts of stocks."

¶ 15        In September 2005, Barger faxed Striegel a letter which included the "redrafted copies of [decedents'] Declarations of Trust and Last Wills and Testaments." According to the letter, "the cash provision for [petitioner] was eliminated" in the declarations of trust, and "it [was] apparent from [Striegel's] Thursday afternoon discussion with Gordon that if [Gordon] has his way[,] most of the property is going to end up with Robert because of his and his family's interest in farming."

¶ 16        In November 2005, Barger sent decedents "draft copies of [their] Declarations of Trust and Last Wills and Testaments" and a letter "to explain the enclosures in 'plain English' so that they [were] understandable." In relevant part, the letter explained article 5 of decedents' declaration of trusts established "the 'Family Trust', which is also for the benefit of the surviving spouse and, at his or her death, [decedents'] sons." The letter further pointed out subparagraph C(1) of article 5 directed that all shares of stock in K-Farms, Inc. were to be distributed to Robert. and, pursuant to subparagraph C(4), "no provision [was] being made for [petitioner]."

¶ 17        On December 7, 2005, Barger met with Striegel, decedents, and attorney Robert Fleming. At that meeting, decedents executed the wills and trust agreements altering the arrangements they made in 1992. According to Barger, Striegel had been a longtime "accountant and tax advisor for [decedents] just as Mr. Fleming had been a legal advisor for them," and

Barger believed decedents "reposed great confidence in both of them." Barger recalled decedents' mental and physical conditions that day as being normal.

¶ 18　　　　Respondents were not present when decedents executed their 2005 testamentary documents. Robert testified he was not involved in decedents' estate planning process, and he did not participate in procuring decedents' 2005 wills and trust agreements. He further testified he had no correspondence with Striegel, Fleming, or Barger in relation to decedents' estate planning. He was not present when decedents signed the documents in December 2005.

¶ 19　　　　Decedents' 2005 wills named Robert as their personal representative. The second section of the wills bequeathed all tangible personal property to the surviving spouse, and the third section bequeathed the residue of their estates in accordance with the terms of the new trust agreements. Decedents' 2005 trust agreements provided that, when they died, all shares of stock in K-Farms, Inc., would be distributed to Robert, and any remaining trust property would be distributed among the sons equally. In both of their trusts, decedents said they were "mindful" of their daughter, but they were "making no provision for her under this Instrument for the reason that [they had] provided for her by other means."

¶ 20　　　　At no point was the proposed "put" agreement signed. However, Ben Walters, the former vice president of agricultural lending at First Farm Credit Services, testified Gordon approached him sometime between 2009 and 2010 seeking a $1 million loan "for what he termed inheritance for *** [petitioner]." Ultimately, the loan was issued to Robert, and petitioner subsequently sold her entire share of K-Farms, Inc., stock to him for approximately $961,000.

¶ 21　　　　2. *The Motion Requesting the Trial Court Find a Presumption of Undue Influence*

¶ 22 On May 10, 2021, after the closing of her case-in-chief, petitioner filed a motion requesting the trial court find a presumption of undue influence. The motion does not appear in the record on appeal.

¶ 23 On May 11, 2021, respondents filed a response to petitioner's motion, arguing petitioner failed to furnish "any Illinois law showing that the elements of the presumption analysis can be satisfied by mixing and matching the conduct of multiple parties." Respondents also asserted petitioner failed to present any evidence "Striegel received any sort of substantial benefit from the estate plans." Further, respondents asserted there was no evidence "with respect to [Robert] that suggests in any way that he prepared or procured the preparation of the contested estate plans." Therefore, according to respondents, the taint for purposes of the presumption was eliminated because no beneficiary played a role in the preparation or procurement of the contested documents.

¶ 24 On May 17, 2021, the trial court denied petitioner's motion to find a presumption of undue influence after reviewing the evidence and "the parties' briefing on imputation issues and the presumption," as well as "all of the imputation and presumption cases." In doing so, the court considered the relevant factors and reasoned "that in no instance where third party conduct was imputed to a beneficiary, was there no evidence of a direct connection." Rather, "there was evidence of an intention to benefit the beneficiaries, or there was evidence that the beneficiaries were seeking the help of the third party." The court also noted "the only evidence *** seems to be that during the operative period *** all of the Respondents Kruger were uninvolved in any way in any of the estate planning," and petitioner failed to present any evidence "Striegel attempted to procure this will for the benefit of Robert." Thus, the court found "the presumption is not and should not be triggered by the evidence in this case due to lack of any evidence of the

involvement, the direct involvement, or really any linkage of any substance of *** the beneficiaries to the wills' procurement through Mr. Striegel."

¶ 25    Ultimately, the jury found the contested provisions of decedents' 2005 wills and trust agreements to be valid.

¶ 26                            C. Posttrial Proceedings

¶ 27    On June 23, 2021, the trial court entered judgment in accordance with the jury's verdict and "reserved ruling and entry of judgment on Respondents' counterclaims."

¶ 28    In September 2022, after "rul[ing] on post-trial motions applicable to claims addressed by the judgment on the jury's verdict" and having "taken under advisement several pending motions related only to the counterclaims," the trial court amended the original judgment order and again reserved ruling on respondents' counterclaims. In doing so, the court "determined that it would be beneficial to the parties and the court for the judgment on the jury's verdict to be subject to enforcement or appeal *** because ascertaining whether the judgment *** will be made a final judgment would prove useful to determining whether the remaining issues are moot or should be addressed further." Accordingly, the court, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), found "no just reason to delay enforcement or appeal of the judgment entered on the jury's verdicts as set forth in this amended judgment."

¶ 29    This appeal followed.

¶ 30                            II. ANALYSIS

¶ 31                            A. Jurisdiction

¶ 32    Before we address the merits of petitioner's appeal, we must first determine whether we have appellate jurisdiction in this case. It is well established jurisdiction is conferred upon the appellate court only through the filing of a timely notice of appeal. Ill. S. Ct. R. 301

(eff. Feb. 1, 1994); *Berg v. Allied Security, Inc.*, 193 Ill. 2d 186, 189, 737 N.E.2d 160, 161 (2000). If a timely notice of appeal has not been filed, the appellate court must dismiss the appeal for lack of appellate jurisdiction. See *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539, 470 N.E.2d 290, 292 (1984) (recognizing an appellate court has a duty to determine if jurisdiction exists and to dismiss the appeal if jurisdiction is lacking). Illinois Supreme Court Rule 303(a) (eff. Jul. 1, 2017) sets forth the time requirements for filing a notice of appeal from a final judgment in a civil case. Rule 303(a) provides that a notice of appeal must be filed within 30 days after the final judgment appealed from was entered or, if a timely posttrial motion directed against the judgment was filed, within 30 days after the order was entered disposing of the last pending postjudgment motion directed against the judgment. Ill. S. Ct. R. 303(a) (eff. Jul. 1, 2017); *Berg*, 193 Ill. 2d at 189. "[W]here a trial court amends its initial final order, the clock is reset regarding the filing of posttrial motions attacking this new final judgment and, thus, the time is reset regarding the time for the filing of a notice of appeal." *Gibson v. Belvidere National Bank & Trust Co.*, 326 Ill. App. 3d 45, 50, 759 N.E.2d 991, 995-96 (2001).

¶ 33    In general, a nonfinal order is not appealable except under the provisions of Rule 304. Rule 304(a) allows for an interlocutory appeal in instances where a final judgment is entered as to one party or claim, but fewer than all parties or claims. Rule 304(a) allows such an interlocutory appeal "only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Further, Rule 304(a) provides, "[t]he time for filing a notice of appeal shall be as provided in Rule 303. In computing the time provided in Rule 303 for filing the notice of appeal, the entry of the required finding shall be treated as the date of the entry of final judgment." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 34    As indicated above, the trial court in this case entered two written judgments, one on June 23, 2021, and an amended judgment on September 9, 2022, which superseded the first. The court, pursuant to Rule 304(a), expressly found "no just reason to delay enforcement or appeal of the judgment entered on the jury's verdicts as set forth in this amended judgment." According to Rule 303(a)(1), plaintiff had 30 days from the entry of this September 9, 2022, judgment to file her notice of appeal. Petitioner filed her notice of appeal on October 11, 2022, 32 days after the only extant final judgment. However, Sundays and legal holidays are not counted for purposes of computing the 30-day filing period. See *In re Estate of Malloy*, 96 Ill. App. 3d 1020, 1025, 422 N.E.2d 76, 80 (1981); see also 5 ILCS 70/1.11 (West 2020). Therefore, her appeal is timely, and we have jurisdiction to consider the merits of this case.

¶ 35                                  B. Standard of Review

¶ 36    Next, the parties disagree on the appropriate standard of review. Citing *In re Estate of Coffman*, 2022 IL App (2d) 210053, ¶ 83, respondents argue for a two-part standard of review and assert petitioner's motion to find a presumption of undue influence is akin to a motion filed pursuant to section 2-1110 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1110 (West 2020)). Section 2-1110 of the Code permits a defendant in "all cases tried without a jury" to move for a directed finding at the close of the plaintiff's case. 735 ILCS 5/2-1110 (West 2020). However, unlike the circumstances presented in *Coffman*, this particular case was tried before a jury and it was petitioner, not respondents, who filed the motion requesting a finding of presumptive undue influence. See *Coffman*, 2022 IL App (2d) 210053, ¶¶ 78, 80.

¶ 37    In contrast, petitioner contends an abuse of discretion standard should be adopted because the trial court's exclusion of "competent and admissible" evidence of Striegel's alleged undue influence was "based on a 'mistake of law.' " We agree. "It is always an abuse of

- 9 -

discretion for a trial court to base a decision on an incorrect view of the law." *A&R Janitorial v. Pepper Construction Co.*, 2018 IL 123220, ¶ 15, 124 N.E.3d 962. "The standard of 'abuse of discretion' is the most deferential standard of review recognized by the law ***." *Pekin Insurance Co. v. St. Paul Lutheran Church*, 2016 IL App (4th) 150966, ¶ 69, 78 N.E.3d 941. "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41, 39 N.E.3d 961.

¶ 38                                C. Undue Influence

¶ 39            In petitioner's view, the trial court failed to properly apply the factors for a finding of presumptive undue influence. In support of her argument, petitioner asserts "[p]rocurement is not an issue because the third party is the procurer," and thus, the court abused its discretion when it denied her motion seeking a finding of presumptive undue influence by failing to impute Striegel's alleged misrepresentations to Robert.

¶ 40            "Undue influence necessary to invalidate a will [or trust] is that influence which prevents the testator from exercising his own free will in the disposition of his estate." *In re Estate of DiMatteo*, 2013 IL App (1st) 122948, ¶ 62, 995 N.E.2d 420. "Undue influence must be directly connected with the execution of the instrument, operate at the time it was made, and be directed toward procuring the will in favor of a particular party or parties." *DiMatteo*, 2013 IL App (1st) 122948, ¶ 62. "What constitutes undue influence cannot be defined by fixed words and will depend upon the circumstances of each case." *In re Estate of Hoover*, 155 Ill. 2d 402, 411, 615 N.E.2d 736, 740 (1993). "Proof of undue influence may be wholly inferential and circumstantial." *Hoover*, 155 Ill. 2d at 411-12. "The influence may be that of a beneficiary or that of a third party which will be imputed to the beneficiary." *Hoover*, 155 Ill. 2d at 412.

¶ 41          In Illinois, a presumption of undue influence arises

"where (1) a fiduciary relationship exists between the testator and a person who receives a substantial benefit from the will, (2) the testator is the dependent and the beneficiary the dominant party, (3) the testator reposes trust and confidence in the beneficiary, and (4) the will is prepared by or its preparation procured by such beneficiary." *DeHart v. DeHart*, 2013 IL 114137, ¶ 30, 986 N.E.2d 85.

Once a presumption is established, the defendant then has the burden to rebut it. *DeHart*, 2013 IL 114137, ¶ 29. A presumption does not shift the burden of persuasion; rather, it shifts the burden of production onto the defendant. *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 462, 448 N.E.2d 872, 876-77 (1983). If a defendant rebuts any one of the four elements by clear and convincing evidence, the presumption of undue influence disappears. *In re Estate of Henke*, 203 Ill. App. 3d 975, 979-80, 561 N.E.2d 314, 317 (1990).

¶ 42          Applying these principles to the instant case, we cannot say the trial court abused its discretion. In denying petitioner's motion for a presumptive-undue-influence finding, the court stated it reviewed the evidence and "the parties' briefing on imputation issues and the presumption," as well as "all of the imputation and presumption cases." Our review of the record also shows the court thoughtfully analyzed the relevant factors and, in doing so, found "that in no instance where third party conduct was imputed to a beneficiary, was there no evidence of a direct connection." Rather, "there was *** evidence of an intention to benefit the beneficiaries, or there was evidence that the beneficiaries were seeking the help of the third party." After carefully considering each factor, the court noted there was no evidence "Striegel attempted to procure this will for the benefit of Robert" and found petitioner failed to present any evidence to

satisfy the last factor—whether the wills were prepared or executed in circumstances where the beneficiaries were instrumental or participated. See *DeHart*, 2013 IL 114137, ¶ 30. To the contrary, "the only evidence *** seem[ed] to be that during the operative period *** all of the Respondents Kruger were uninvolved in any way in any of the estate planning." As a result, the court found "the presumption is not and should not be triggered by the evidence in this case due to lack of any evidence of the involvement, the direct involvement, or really any linkage of any substance of *** the beneficiaries to the wills' procurement through Mr. Striegel."

¶ 43            Furthermore, petitioner's argument asks this court to find the trial court abused its discretion by not imputing Striegel's alleged misconduct to Robert in order to satisfy the elements of presumptive undue influence without a reasoned rationale for doing so. In fact, none of the legal authority on which petitioner relies shows the prerequisites of imputing influence onto a beneficiary absent any relationship between the beneficiary and the influencer, particularly where the influencer received no benefit. For example, in *Swenson v. Wintercorn*, 92 Ill. App. 2d 88, 94-95, 234 N.E.2d 91, 94 (1968), the defendant immediately opened a joint checking account with the decedent and shared a safety deposit box with her after helping the decedent move into her home. Subsequently, the defendant and her husband procured the services of their attorney to come to the defendant's home and assist the decedent with planning her estate. *Swenson*, 92 Ill. App. 2d at 95. The meeting resulted in the preparation and execution of testamentary instruments which provided that, upon her death, the decedent's estate would be distributed as follows: $2500 to a niece, $2500 to the plaintiff, and the balance to the defendant. *Swenson*, 92 Ill. App. 2d at 97. "[B]oth [the defendant] and her husband were present during the time the trust instruments and the will, as finally prepared, were explained and executed by [the decedent]." *Swenson*, 92 Ill. App. 2d at 101.

¶ 44    Instead, petitioner relies on one sentence taken from *Cheney v. Goldy*, 225 Ill. 394, 400, 80 N.E. 289, 291 (1907), to show Striegel's actions during the estate planning process ought to be imputed to Robert—"Proof of undue influence *** may be that of a third person as well as that of direct beneficiaries." However, this argument is legally and factually insufficient. In that case, the defendants, a mother and her children, moved the 83-year-old decedent into their home and arranged for a notary public to draft a will after the decedent seriously injured his leg. *Cheney*, 225 Ill. at 397. The notary public "claimed to be unable to write a will, and his father-in-law, *** a real estate agent, was brought for that purpose." *Cheney*, 225 Ill. at 397. At trial, the real estate agent testified the decedent instructed him as to how the will should be written, and he then went into the room where the defendant-mother was waiting and asked his daughter to write the will as he dictated it. *Cheney*, 225 Ill. at 398. The defendants "had possession of the will the night before it was signed and kept it until the next morning." *Cheney*, 225 Ill. at 398. At the time it was executed, the defendant-mother read the contested will to the decedent, which bequeathed his entire estate to her children, and held the decedent's arm to assist him in signing. *Cheney*, 225 Ill. at 398.

¶ 45    Here, unlike *Cheney*, there is no evidence Striegel had any motivation or received any benefit, financial or otherwise, in Robert's receiving the gift. *Cf. Addis v. Grange*, 358 Ill. 127, 131, 192 N.E. 774, 776 (1934) (finding the testator's banker, who procured the contested will and to whose bank the defendant was indebted, "was more intent in putting [the defendant] in a position where she would have means with which to pay at least a part of her obligation to the bank"). Although petitioner points to facts about Striegel's conduct during the estate planning process—including his proposal of the "put" agreement—none provide a reason to infer undue influence or to impute Striegel's actions onto Robert. Instead, as the trial court stated when it

denied petitioner's motion for a finding of presumptive undue influence, "the only evidence \*\*\* seems to be that during the operative period \*\*\* all of the Respondents Kruger were uninvolved in any way in any of the estate planning." Accordingly, we find no abuse of discretion where the court properly applied the relevant factors in denying petitioner's motion, and there was no evidence decedents' testamentary instruments were prepared or executed in circumstances where the *beneficiaries* were instrumental or participated. See *Seymour*, 2015 IL 118432, ¶ 41; *DeHart*, 2013 IL 114137, ¶ 30.

¶ 46                                III. CONCLUSION

¶ 47          For the reasons set forth above, we affirm the trial court's judgment.

¶ 48          Affirmed.