L. M. WILLSON *et al.*, executors of Matthew Whitfield, deceased, plaintiffs in error, *vs.* MATTHEW C. WHITFIELD *et al.* legatees, defendants in error.

When a testator appointed four executors to execute his will, and an application was made to the Ordinary to require three of the executors to give bond and security according to the provisions of the 2411th section of the Code, upon the ground that said executors were *mismanaging* the estate of the testator, and said cause having been tried in the Superior Court, on appeal from the Court of Ordinary, and the jury having returned a verdict requiring the executors to give bond and security, and a motion having been made in the Court below for a new trial, which was overruled:

*Held*, First, that the *insolvency* of the executors is not *per se* a sufficient ground to require the executors to give bond and security, especially,

when it appears from the evidence in the record, that their *pecuniary* condition is as good *now*, as it was at the time of their appointment by the testator.

Second, that the turning over to one of the executors, by the widow, shortly after the testator's death, of a large amount of promissory notes and other evidences of debt, which, said executor has continued to hold and retain in his possession, with the consent and approbation of two of the other executors, against the *protestation* of the fourth named executor, is not *per se* such *mismanagement of the estate*, as will require the executors to give bond and security under the law.

Third, that the Court erred in charging the jury, "that if more than one qualifies, each is authorized to discharge the usual functions of an executor, but all must join in executing a *special* trust, and I *refer you to the will to ascertain whether it contains a special trust,*" whereas, the Court should have charged the jury, whether the will did, or did not, contain any *special* trusts, that being a question of *law* for the Court to decide, and not a question of *fact* to be referred to the jury.

Fourth, that the Court erred in not granting a new trial, upon the ground, that the verdict of the jury was strongly and decidedly against the weight of the evidence, as to the mismanagement of the estate by the executors.

Equity. Charge of the Court. Tried before Judge SPEER. Jasper Superior Court. April Term, 1868.

Matthew C. Whitfield, in his own behalf, and John B. Whitfield, Boling Whitfield, and Comar B. Whitfield, minors, by their next friend, the said Matthew C. Whitfield, by bill in equity, made the following case:

1st. They are the only grand-children of Matthew Whitfield, late of said county, deceased, and are the chief and residuary legatees under the will of said Matthew Whitfield.

2d. Leroy M. Willson, Pleasant Willson, and John F. Patterson, three of the executors under said will, are mismanaging the estate of said Matthew Whitfield, and are not only disregarding, but plainly violating the directions and provisions of said will.

3d. Said three executors have taken forcible possession of all the assets of said estate, and so keep them to the exclusion of William H. Matthews, the other executor, and are compelling said Matthews to resort to legal process to join in the execution of said will, thus incurring expense, litigation, and embarrassment in a wicked, willful and unnecessary

manner, and in direct disregard of the will appointing said Matthews one of the executors.

4th. Said three executors are not keeping up the farms of testator as they are expressly required to do by said will, but have illegally sold all the perishable property, mules, stock, provisions, and tools, and have rented out the farms in direct and willful contravention of the directions of the will.

5th. Said three executors have taken possession of the estate and rendered said William H. Matthews unable to execute the will; have entirely failed and refused to provide education and support for the grand-children of the testator, as they are expressly required to do by said will.

6th. Many of the debts due said estate, being old debts, the said executors refuse to make such settlements with debtors as would be to the manifest interest of the estate, and such as the legatees (the real parties in interest) are anxious should be made, in view of the great uncertainty of the solvent condition of the people. Said executors refuse to take property for such debts, and refuse to consult the interest of the legatees, but seem determined to use said estate exclusively for their own interests, as if the assets belonged to them.

7th. Said three executors are all related to each other, being father, son and son-in-law, and are all insolvent, and have become so, or have developed so, since the execution of said will; and said Patterson has changed his residence from the county of Jasper since the death of testator, and now threatens to remove the administration to another county, where the said three executors now reside, and solely for their own convenience and interest, and without any regard to the interest of the legatees, but to promote their own business, that of speculation and trade.

8th. Though one of the grand children has arrived at age, and the income of the remainder of the estate would be amply sufficient, and more than sufficient, to support and educate the remaining orphan children, said three executors refuse to set apart that portion to which the said grand child, arriving at age, is entitled to under the will.

9th. This absorption of the whole estate by a portion of the executors, constituting one family, the exclusion of the remaining executor, who is solvent and who has the confidence of the legatees, the reduction of all the estate they can to money, and the refusal to use the money as plainly directed by the will, and all by persons who are insolvent in fact, and traders by profession, and the use of large sums in litigation and attorney's fees, in their efforts to maintain this selfish and illegal use of the estate, is not only mismanagement, but is endangering the entire estate. Complainants believe and represent that it will result in great and irreparable loss to the estate, if the said three executors are not required to give bond and security for the faithful administration of the trust, or, in default thereof, to surrender the assets without delay, and be removed from the execution of said will.

They prayed for an order requiring said three executors to give bond and security for the faithful execution of their trust, or show cause to the contrary, and on failure to give bond, that the letters testamentary to them be revoked, and the assets be delivered to said William H. Matthews, as executor under said will, or to such other person or persons as the Court should appoint to represent the estate.

Leroy M. Willson and Pleasant Willson, two of said executors, answered, that since their qualification, they had no possession of any of the assets of the estate, and had performed no act as executors whatever. They denied any concert or combination with either of the other executors for any purpose.

John F. Patterson, the other of said three defendants, admitted allegation number one to be true.

He denied mismanaging the estate and violating the provisions of the will, as charged in allegation number two.

He denied having taken any other than peaceable possession, without force, of any portion of the assets of said estate. He obtained possession of said assets, so far as as they were delivered to him, and kept them to the exclusion of all persons, as he was lawfully entitled to do, and as he believed it his duty to do.

He admitted that he was not keeping up the two farms of testator, kept up by him at his death, but said he was renting such parts of the land, whenever practicable, that were connected with the two farms kept up by testator at the time of his death, but sold a part thereof, as he was authorized to do. He sold the perishable property, believing it to the interest of the estate. In this, William H. Mathis, the other executor, concurred, and was present at the sale. The sale was advantageous to the estate.

He denied neglecting the education and support of the minor grand children of testator.

He denied refusing any settlement of any old debt when such settlement was offered, and would, if accepted, in his judgment, have been beneficial to the estate. He had not consulted the complainants, but had conferred with counsel as to his own safety in precipitately accepting such offers of debtors to transfer such property as they chose to offer in payment of debts. When he had declined such offers, no money or other thing had been paid.

He admitted his relationship to the Messrs. Willson, his co-executors. He denied being insolvent.

He said he changed his residence in 1865, and desired the privilege of making his returns in Morgan county. He denied speculating on the monies of the estate.

In response to the 8th specification, he answered that he had been notified of large claims against the estate, involving thousands of dollars which had not yet been sued, and until these matters were adjusted, or important collections were made, he must decline a final settlement with Matthew C. Whitfield.

He denied all the allegations, arguments, inferences and conclusions contained in the 10th ground. He said he had paid no attorney's fees as yet, to any person, beyond the sum of one hundred and fifty dollars.

The will, alluded to, was as follows:

" GEORGIA—JASPER COUNTY.

" I, Matthew Whitfield, of said county and State, being of disposing mind and memory, do make, publish, and declare this my last will and testament, in manner and form following, to-wit: first revoking all other wills and testaments and codicils to such wills attached, heretofore by me at any time made:

" 1st. I will that my debts be paid as soon as practicable.

" 2d. I give and bequeath to my beloved wife, Martha, one-half of my household and kitchen furniture; also, one-half of my horses, mules, cattle, hogs and sheep, plantation tools, plows, gear of every description, wagons and carts attached to my home place; also, one-half of all my provisions and provender of every description, which may be on hand at the home place, together with the one-half of my cotton crop that may be growing or matured on my home place, forever in fee simple. I also give and bequeath to my said wife, Martha, the sum of seven thousand five hundred dollars cash, to be paid to her, without interest, at the expiration of twelve months from my death, to be hers forever.

" 3d. I give and bequeath to my wife, Martha, the following lots or parcels of land, situated in said county, namely:
*    *    *    *    *    *    *    *    *    *    *
Intending this (the last named lot) for fuel and plantation uses, I desire it to be laid off in the most compact and convenient form, the said several lots or parcels of land, and all the appurtenances, to be the property of my said wife, for and during her natural life only, and immediately after her death to revert to my estate, and to fall into the general residuum and be disposed of, as is the greater portion of my estate, not specifically bequeathed and particularly enumerated; but it is hereby expressly declared that these lands bequeathed to my wife are given her in lieu of her dower in all my lands, and if not accepted as such, then the said tracts or parcels of land to fall into the residuum of my estate, as I also direct shall be done likewise with the cash bequeathed to her, which is to form part of the residuum of

my estate, and not be paid my said wife, unless she accepts the legacy of lands above described in lieu of her dower in my entire estate.   The forests must not be cut down.

" 4th.  I direct my executors, herein after named, out of any moneys in their hands, to appropriate, for the support of my son, William H. Whitfield, semi-annually, the sum of $400, (four hundred dollars,) and also to allow the said William H. to occupy and use during his life, the tract of land known as the Lynn tract, (formerly Pearsons,) lying in Jasper county, or such other tract of equal value as my executors may deem most expedient for the said William H. to reside on.

" 5th.  On account of the change made in the country, in regard to the institution of slavery, by which it has become extinct, I feel constrained to decline making any bequests to any person not of my immediate family.  I had by my former wills made some such bequests.

" 6th.  I will and direct that the entire residue of my property, of every description whatever, real, personal or mixed, including that portion which may revert from my wife, be held by my executors, and used and employed by them to the best advantage, they keeping up the farms, and converting at discretion, my unoccupied and detached lands into money, and out of the rents, interests, issues and profits of said property, to pay to Wm. H. Whitfield, my son, his semi-annual allowance of $400, (four hundred dollars,) as herein-before directed, during his natural life; that out of the same fund, they make all proper provision for the proper education and support of my grand-children, living at the time of my death, or born after my death to my said son, William H. Whitfield, either by his present or any future wife he may have; and I further direct that all my grand-children shall receive the same support as is directed for those now in life, and this support shall continue from year to year until a child shall have set apart to him a part of the *corpus* of the property sufficient to support him as he should be expected to live.  I direct my executors, upon the arrival at age of any of my grand-children, to take into consideration

the annual profits and interest arising from the property herein treated of, and if the same be ample, in their opinion, to pay the semi-annual allowance to the said William H. Whitfield, and to furnish a reasonable support to my aforesaid grand-children, or any that may be born to my said son, William H. Whitfield, by his present or any future wife he may have, the said executors may set apart to such grandchild, such a portion of said property as they, the executors, may deem proper, the same to be realty or personalty, money or notes, as they may choose, and the same shall be valued by three disinterested persons, to be chosen by the executors, and delivered to such child as part of his legacy or distributive share of said property, to be taken into account in the eventual division ; and the executors shall have the same authority to act, as each grand-child may arrive at full age.

7th.    In the event of the death of all the legatees who take life-time-interests, under this will, I direct, in case this occur before the arrival at age of my youngest grand child, that the division of the entire *residuum* of my estate take place, and that my said grand children be all made equal in the division, taking into view what each child may have before that time received.   Said division to be made upon the arrival at age of the youngest of my grand children, and each of said grand children is to hold his or her legacy in fee to him and his or her heirs forever.

8th.    In the event of the death of any one or more of my grand children before their arrival at the age of twenty-one years, the survivors shall take such share or legacy in fee, to the exclusion of all other persons.

"9th. I direct that my executors shall not deliver any portion of my property to any of the legatees to whom the same may be devised, until the close of .the year in which I may die.

(The money legacies are directed to be paid at stated times.)

"10th. I give full power and authority to my hereinafter named executors, to exercise their discretion in the purchase of lands for my estate, and also of all necessary personal

property, for the benefit of my estate, with full authority to make all necessary repairs of houses and machinery.

"11th. I constitute and appoint my trusty friends, Leroy M. Willson, Pleasant Willson, John F. Patterson and William H. Mathis, my executors, to carry out this, my last will and testament, in witness of all which, I have hereunto set my hand and seal, this the fourth day of November, 1865.

MAT. WHITFIELD, [SEAL]."

It was regularly witnessed and probated in May, 1867.

It was read in evidence by the complainant, as was also the inventory and appraisement of the estate, shewing personal property to the value of $11,460 62, and promissory notes and other evidences of debt belonging to testator, amounting to the sum of about $275,468 48, including notes dated during the war, before and since. The $11,460 62, personalty above, is included in the last named sum of $275,468 48.

Movent read his petition and the answers.

It was admitted that Patterson and Mathis qualified, May 1867, the other two executors, some five months after. Much evidence, *pro* and *con*, was introduced, as to the management of the estate, the disagreement of the three with the fourth executor, etc. It was shewn that defendants were pecuniarily as well off now, as when they were appointed.

It is useless to report any more of the testimony.

The cause being closed, his Honor, the presiding Judge, charged the jury as follows:

1st. Where the pecuniary condition of an executor was known to the testator, and is proven to be as good as it was at the time of the execution of the will, or at the time of the testator's death, he cannot be removed for insolvency, nor required to give bond for this cause alone.

2d. It is not a ground for requiring bond of an executor, that he failed to provide liberally for the support, clothing and education of children, who are, by the will, entitled to support, clothing and education. His duty is to carry out the will of the testator, in this regard, in a manner reasonable.

3d. Where such support, clothing and education, is directed to be provided out of the profits and interest of the estate alone, the executor cannot appropriate any part of the *corpus* of the estate to these purposes. In such cases, a court of equity affords the remedy.

4th. A refusal by one executor to deliver to a co-executor, a part of the notes of his testator, of which he alone has been possessed since the death of the testator, is not a sufficient ground to require such executor to give bond, provided such refusal has not brought loss upon the estate.

5th. Where, by his will, a testator directs executors to keep up his farms, having, at the time of his death, a large number of farms, two only of which he was then cultivating, and one of these two, at the time of making the will, it is proven, was cultivated by from twenty-five to thirty hands, and at his death, by only five laborers, equal to three good hands, and leaving the other to his widow during her life, with stock, provisions and implements of husbandry, and giving no directions as to the proceeds of the first described farm, and making distinct provisions for the support of his only child, a son, by an annuity, and of the children of that son, from other specific sources, and when the will gives power to advance as part of his legacy to a grand child, upon his arriving at age, any real estate of the testator on account of his legacy, it is no breach of duty on the part of the executor to deliver to such grand child, upon his application, this small farm, as a part of his legacy.

6th. That when two of four executors qualify soon after testator's death, and one of these has the sole possession of the notes of the estate, and is performing alone, the duties of executor, and four months after, the remaining two executors qualify, and do not perform any act as executors for seven months, it is not a ground for removal or requirement of bond, of such last named two executors, that they have performed no act, unless their failure to act amounts to gross negligence, whereby loss has resulted to the estate, in which event they would be properly chargeable with the conduct of their co-executor, and responsible for his mismanagement.

Willson *et al.*, *vs.* Whitfield *et al.*

7th. It is the duty of an executor to pay the debts of his testator and the specific legacies named in the will, and to provide the twelve months' support for the widow or family before paying to a residuary legatee his full share of the residuum, and it is not mismanagement in the executor to refuse to pay such share.

8th. Where it appears from the evidence that an executor, for the purpose of securing the payment of a note belonging to the estate, places it in the hands of attorneys at law of good standing, with instructions to proceed to secure the same, reasonable diligence is exercised.

9th. A will is the legal declaration of a man's intention as to the disposition of his property after his death. This will is to be executed by one nominated therein. . Such a one is called an executor. This one, on being qualified, is appointed executor, and he is sworn to execute the will of his testator. That will, if it does not contravene the law, is the law of his administration; it is the rule of his conduct. The law imposes upon him the duty, first, of paying debts; second, specific or special legacies; third, residuary legacies; fourth, to hold any residue undevised to the next of kin.

10th. The cardinal rule is to carry out the intention of the testator, as expressed in his will, in good faith, and with that prudence and diligence as to his duties, as should characterize the conduct of men of ordinary prudence and care.

11th. Each executor is responsible for his own act only, unless by his own act or gross negligence, he has enabled or permitted his co-executor to waste the estate.

12th. The law is, an executor is not required to give bond; but upon complaint that he is mismanaging the estate, or is about to remove, he may be required to give security.

13th. There must be, then, mismanagement on the part of the executor, to impose the condition of security upon him.

14th. From an examination, I charge you that the insolvency alone of executors is not a sufficient reason to require that he or they should give bond.

15th. If an executor is insolvent, a special jury might be justified, on slighter proof or evidence of mismanagement, in

requiring security, than if the executor was unquestionably solvent; but, if a testator chooses to repose confidence in an executor who is insolvent, whatever may be the basis of that confidence, so long as such executor faithfully executes the trusts confided to him, so long no power can compel him to give security.

16th. If several executors are named in the will, one or more qualifying, shall be entitled to execute all the trust confided to all, unless specially prohibited. If more than one qualifies, each is authorized to discharge the usual functions of an executor, but all must join in executing a special trust, and I refer you to the will to ascertain whether it contains a special trust.

. 17th. As I before said, the cardinal rule is, for the executor to execute, in good faith, the will. They are, though four in number, recognized as but one, in law, and each is privileged to exercise the duties of his appointment, unless prohibited in the will.

18th. Mismanagement may consist, either in negligence to discharge duty, or in failing or refusing to execute the will.

19th. It is the duty of co-executors to act in harmony in executing the will, and, of course, is indispensable where the operation of all is essential to the execution of his trust. But the possession of assets by one executor to the exclusion of others, if not prohibited by the will, may not, and does not, amount to mismanagement, unless it jeopardizes or puts in hazard the interest of the estate.

20th. If differences and disputes about the assets between the executors results in loss to the estate, then this may be such mismanagement as would justify you in requiring them to give bond and security.

21st. Mismanagement may be defined to be negligence or malpractice in taking care of the estate and executing the will, in waste of the estate, or any part, or failing to take due care of the support and education of minors whom he is intrusted with.

22d. A simple omission to join in the active administration, is not mismanagement, unless the omission amounts to

gross negligence, whereby loss or waste is permitted. For light or trivial causes, executors ought not give bond.

23d. If, by the act of Patterson, the estate has suffered loss, or been put in jeopardy, this is mismanagement by Patterson. If the Willsons consented to or permitted such act, they are, also, guilty of mismanagement.

The jury returned a verdict in favor of complainants, requiring the defendants to give bond and security : whereupon counsel for defendants moved a new trial in the said cause, on the following grounds:

1st. Because the jury found contrary to the charge of the Court.

2d. That the jury found contrary to the charge of the Court and the evidence, there not being proof sufficient of waste or mismanagement of the estate to authorize such finding.

3d. Because the verdict was strongly and decidedly against the weight of the evidence.

4th. Because the verdict was strongly and decidedly against the weight of the evidence and the charge of the Court.

5th. Because the verdict was contrary to evidence and the principles of justice and equity.

6th. Because there was no evidence going to show that Leroy M. Willson and Pleasant Willson, two of the executors, had anything whatever to do with the assets of the estate, or that they acted in concert with Patterson, or that they performed any act as executors, or that by their failure to act, they had injured the estate.

7th. That there was no evidence that Mathis, one of the executors, was prevented by other of the respondents from performing any act as executor, except so far as the refusal of Patterson, one of the respondents, to turn over to him, the said Mathis, a part of the promissory notes belonging to the estate, goes.

8th. Because the verdict was contrary to law, evidence, and the charge of the Court.

9th. Because the Court erred in charging the jury as to special trusts, requiring the joint action of all executors,

without instructing them as to what constitutes a special trust, but referring them to the will, to ascertain whether it contained a special trust.

The Court refused the new trial, and this is assigned as error on the grounds aforesaid.

J. HILL, A. REESE, JORDAN, FOSTER, for plaintiffs in error.

W. A. LOFTON, B. H. HILL, for defendants in error.

WARNER, J.

This was a proceeding originally instituted in the Court of Ordinary of Jasper county, to require three of the executors appointed by the last will and testament of Matthew Whitfield, deceased, to give bond and security, as required by the 2411th section of the Code, upon the ground that said executors were mismanaging the estate. An appeal was taken from the Court of Ordinary to the Superior Court, and upon the trial of the appeal, the jury found a verdict requiring the executors to give security. A motion was made for a new trial in the Court below, upon the several grounds specified in the record, which motion was overruled by the Court. The refusal of the Court to grant the new trial is now assigned for error here.

It appears from the record that Matthew Whitfield, the decedent, died possessed of a large estate, consisting of real and personal property, and choses in action, leaving a will, by which he appointed his *trusty* friends, Leroy M. Willson, Pleasant Willson, John F. Patterson and William H. Mathis, his executors, all of whom qualified as executors. What are the rights and duties of executors, as between themselves, (where there are more than one,) as declared by the Code, in regard to the management of the estate? "If several executors are named in the will, *one* or more qualifying, shall be entitled to execute *all the trusts* confided to *all*, unless *specially prohibited by the will;* if more than one qualifies, *each* is authorized to discharge the usual functions of an executor;

Willson *et al.*, *vs.* Whitfield *et al.*

but all must join in executing *special* trusts. Each executor is responsible for his own acts *only*, unless, by his own act, or gross negligence, he has enabled or permitted his co-executors to waste the estate." Revised Code, section 2413. There is no *special prohibition* in this will as to the acts of *any one* or more of the executors named therein. By the common law rule, co-executors, however numerous, were regarded, in the eye of the law, as an *individual person*, and the acts of any one of them, in respect of the administration of the effects, were deemed to be the acts of *all*, they all having a joint and entire authority over the whole property. 2 Williams on Executors, 620. Toller's Law of Executors, 358.

One of the grounds of mismanagement relied on is, that the widow of the testator, shortly after his death, turned over to Patterson, one of the executors, a large amount of promissory notes, and other evidences of debt, which he has continued to hold, with the consent and approbation of two of the other executors, against the wishes and *protestation* of Mathis, the other executor. This is no evidence of mismanagement of *the estate*. Each executor is responsible for his own acts, and Mr. Mathis is no part of Whitfield's *estate*. The insolvency of executors is not *per se* a sufficient ground to require security, the more especially when it appears that their *pecuniary* condition is quite as good *now* as it was at the time of their appointment by the testator.

We think the Court erred in its charge to the jury "that if more than one qualifies, each is authorized to discharge the usual functions of an executor, but all must join in executing a special trust, and I *refer you to the will to ascertain whether, it contains a special trust."* Whether the will contained any *special* trusts which required the *joint* action of all the executors, was a question of *law* for the Court to decide, and not a question of *fact* to be referred to the jury for their decision.

Upon looking through the evidence in this record touching the question of mismanagement of the estate by the executors so as to require them to give security, we think that the verdict

of the jury was strongly and decidedly against the weight of the evidence, and that the Court below erred in not granting a new trial upon that ground.

Let the judgment of the Court below be reversed.