CHARLES FLOTO, Appellant, *vs.* MARGARET FLOTO, Admx., Appellee.

*Opinion filed April 23, 1908.*

1. WILLS—*what evidence is competent in rebuttal.* In a will contest case, where the alleged fact of the testator's belief in the infidelity of his wife is first brought out by the contestant's evidence and is made one of the main premises of an hypothetical question on the subject of the testator's sanity, it is proper to admit, in rebuttal, proof of the fact that the testator had stated to the witnesses that after an investigation of the reports of his wife's infidelity he believed them untrue.

2. SAME—*prior declarations of testator as to different disposition of his property are not admissible.* Prior declarations of the testator, or prior wills, cannot be received in evidence for the purpose of varying or controlling the operation of the contested will.

3. SAME—*evidence tending only to mislead jury should be rejected.* In a will contest case it is the duty of the court to see

whether particular evidence is relevant or tends to prove the point at issue, and if the question involved is the testamentary capacity of the testator, all evidence not tending to throw any light upon that question and which can only mislead the jury should be rejected.

4. SAME—*what evidence is properly rejected as bearing upon too remote a transaction.* In a will contest case, where the issue is testamentary capacity, evidence relating to the testator's having revoked an order for his first wife's tombstone is properly rejected, where the transaction took place some seven years before the will in contest was executed.

5. INSTRUCTIONS—*what is not a singling out of particular evidence.* Where evidence is admitted for a restricted purpose, an instruction to the jury as to the limits within which such evidence may be considered by them is not subject to the objection that it singles out and gives undue prominence to such evidence.

APPEAL from the Circuit Court of Ogle county; the Hon. O. E. HEARD, Judge, presiding.

FRANC BACON, and JOSEPH SEARS, for appellant.

J. C. SEYSTER, and M. H. EAKLE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Ogle county finding that the instrument in controversy was the last will and testament of Ernst Floto, deceased. The will was ordered admitted to probate in the county court of that county June 14, 1900, and on appeal to this court that order was set aside upon jurisdictional grounds. (*Floto v. Floto,* 213 Ill. 438.) The will having thereafter been again admitted to probate in the said county court, a bill in chancery was filed to the January term, 1905, of said circuit court, asking that the will be set aside on the ground of testamentary incapacity and undue influence. The first two trials resulted in a disagreement of the jury in each case. On this trial the court took from the jury the question of undue influence, and the jury found that the document in question was the last will and testament of said Floto and that he was of sound mind and memory.

Ernst Floto died April 17, 1900, of pneumonia, aged about eighty years. He and his first wife had lived in Ogle county on a farm for many years. Afterwards he moved to Forreston, where she died. Very shortly thereafter he married appellee. Testator left no children surviving him by either marriage. Appellant is a nephew. Testator accumulated property valued at about $25,000, most of which was loaned out on notes and mortgages, but he owned a small amount of real estate. Some twenty-nine witnesses testified on behalf of the proponent of the will that in their opinion Floto was of sound mind and memory when he executed the instrument. Most of these had been his friends and neighbors for a considerable length of time; some had borrowed money from or transacted other business with him. The testimony of all these witnesses was to the effect that Floto was well able to take care of himself in all these transactions; could compute interest with ease and accuracy and was a business man of considerable shrewdness.

The will was drawn in January, 1900, by Cyrus Billig, a justice of the peace, who testified that Floto spoke to him about drawing a will, whereupon the witness told Floto to go home and jot down what he wanted in it. The witness testified that at this time Floto told him he wanted to give all his property to his wife. Several days later the witness went to the house and Floto gave him a paper written in English, stating that he wanted all this property willed to his wife, Margaret Floto. The witness testified that he thereupon sat down and drew the will in accordance with the request of the testator, and after it had been read to him the witness and Floto went to a neighboring hardware store, where both the proprietors, at Floto's request, signed the will as witnesses. Billig further testified that appellee was in the house with her husband at the time the will was drawn, but he was not sure whether she was in the room when he read the will to testator; that he could not say whether she was or not; that no one else was in the room

at that time. There was no testimony introduced of any kind to show that appellee interfered or took part in any way with the making or attestation of the will.

The main points in the testimony of appellant, relied upon to show unsoundness of mind or undue influence, are as follows: In 1892 the witness Flachtmeier, a dealer in monuments, contracted with Floto for a stone to be erected at the grave of the first wife. Thereafter appellee called the witness into the house as he was passing, and Floto informed him that he had decided his first wife was not worthy of a gravestone and he did not want it put up. The witness persuaded him to change his mind and have it put up, but appellee again called him into the house about two weeks later, whereupon Floto insisted on paying for the stone but said he did not wish to have it put up. It was never erected. The inscription to be placed on the monument gave the date of the first Mrs. Floto's death as October 3, 1892. The testimony of Flachtmeier was ruled out by the court and the jury were instructed not to consider it as in evidence. Appellant also offered to prove by the official marriage record that Floto married his second wife October 25, 1892, which would be less than a month after the death of his first wife, as shown on the inscription on the tombstone. Two witnesses testified that Cyrus Billig had stated it was undoubtedly the undue influence of appellee that caused the making of the will in that form. Billig denied that he had so stated. Meyers, a liveryman, testified that Floto told him that he had written three or four wills and appellee had made him tear them up; that she had given him a bad disease; that she wanted a piano, and stated that unless he gave it to her she would go and sit on the railroad track and let the train run over her; that on two of these occasions Floto was crying while talking about these matters. This witness did not think him of sound mind at the time of these conversations, but did not appear to be willing to testify that he was of unsound mind except

at the time he was in the livery barn. Nicodemus, the night watchman at Forreston, stated that one night in 1898 Floto asked his assistance in locating appellee; that together they searched for her about the town; that Floto was then very much excited, and his mind was not sound at the time the witness saw him. This witness testified that on the former hearing of the will, about a year before, he had stated in this same case, when asked what he thought, that he had not thoroughly made up his mind as to whether Floto's mind was unsound. Henry Paul, a nephew of Floto's first wife, testified that Floto stated, five or six months before his death, that he had contracted a disease from appellee. This witness testified that he would not take his oath that Floto's mind was sound, yet the public might not notice any unsoundness. He also testified that on two occasions while talking with Floto about his troubles he (Floto) had had a crying spell. He stated that he would not swear that Floto did or did not have mind enough to transact business affairs. A letter from testator was admitted in evidence, in which he stated, with considerable detail, circumstances which he evidently considered suspicious as to his wife's conduct with a man doing carpenter work about the house in the summer of 1899; also a letter written by testator to his brother and sister-in-law, in which he accused his wife of infidelity and stated that it was coming to a divorce. Both appellee and the man in question testified on the stand that there was no truth in the charges. Appellee also testified that she had never given her husband a bad disease. The testimony showed that Floto caused to be drawn up several other wills than the one here in question. One of these left the bulk of his property to his brother, Louis, and the balance to appellee. Another left appellee an annuity of $400 per year and the balance to the testator's nephews and nieces. None of these wills were admitted in evidence. Appellant also offered a letter from testator dated April 1, 1895, recounting his domestic quarrels with his wife and

stating his intention to dispose of his property, giving about $14,000 to his nephews and nieces and the balance to his wife. A letter was also offered from Floto, dated July 28, 1895, of the same general tenor as the one just mentioned; also one dated October 24, 1898, speaking of dividing his property among the nephews and nieces, with a provision for $400 per year to be paid to the widow. These last three letters were not admitted in evidence and were not read to the jury. Dr. Harland was asked a hypothetical question dealing largely with the fact that the man in question charged his wife with infidelity without cause and made a large number of wills during the last years of his life. The doctor's answer was that he did not consider such a man to be of sound mind and memory. Dr. Overfield was asked the same question and gave a like answer. These witnesses stated one of the symptoms of senile dementia to. be that the patient was not cleanly in his habits. All the testimony goes to show that Floto was neat and clean in appearance and upright in carriage. This constitutes substantially all the testimony introduced on behalf of appellant. Several other witnesses took the stand, but such of their testimony as was material was along the same general lines as above set forth.

On rebuttal Jacob Swank testified that in the latter part of 1899 Floto called him into his residence and stated that he had investigated certain reports in regard to appellee's infidelity and found them untrue. Henry Zundahl testified that in August, 1899, Floto stated to him that the talk was around that appellee was not true to him and he believed the reports, but the witness stated that two or three weeks later Floto again talked to him about the matter and said he had investigated and found these stories were not true; that some of the relatives had taken that means to work him up against his wife. He also stated that he saw Floto crying several times when he was talking to him, even before the death of his first wife; that that seemed to be one of

his habits. A third witness, Slocum, testified that Floto stated to him that the stories about his wife were not true.

Appellant's first contention is that the admission of the testimony of these three witnesses in rebuttal was error, and that it should have been introduced, if at all, as a part of the testimony in chief. Nothing seems to have been brought out in the examination of appellee's witnesses, either on direct or cross-examination, that alluded in any way to the infidelity of appellee. This evidence was first introduced by appellant. One of the main premises in the hypothetical question upon which the two physicians based their answers was that Floto had unfounded delusions concerning his wife's infidelity. We think it was entirely proper to show in rebuttal that after investigation he believed these reports unfounded. Even if it be conceded that the evidence of these witnesses should have been introduced as a part of appellee's testimony in chief, it would not be reversible error to allow it to be introduced in rebuttal. The order of introducing proof rests largely in the discretion of the trial court. This discretion should be so exercised that neither party will be taken by surprise or deprived of an opportunity, without notice, to introduce evidence in contradiction. (*Mueller* v. *Rebhan*, 94 Ill. 142.) Appellant does not claim that on account of this evidence being introduced in rebuttal he was deprived of an opportunity of introducing any material evidence.

Appellant contends that the evidence as to the contents of the other wills executed by testator, and also the three letters written by testator stating the disposition he intended to make of his property, should have been admitted in evidence. He cites many authorities from other jurisdictions to uphold his contention. While it is true that the authorities are not harmonious on this subject, it is unnecessary to discuss those in other jurisdictions, as the rule has long been recognized by this court that prior declarations of the testator or prior wills cannot be offered for the purpose of

varying or controlling the operation of the contested will. The reasons for this rule have been so fully and frequently set forth in former decisions that it is unnecessary to re-state them here. *Harp* v. *Parr,* 168 Ill. 459; *Compher* v. *Browning,* 219 id. 429; *Waters* v. *Waters,* 222 id. 26; *Cheney* v. *Goldy,* 225 id. 394.

Appellant contends, however, that even though the general rule be as laid down in these decisions, those parts of the letters in question which did not refer to testator's intentions as to the disposition of his property were competent, and the court below should have allowed them in evidence to show the mental condition of the testator. We find nothing in any of these letters that indicates in the slightest manner any unsoundness of mind on the part of testator. Had they been introduced, their only effect would have been to show the jury that testator had at other times held different views than disclosed by this will as to how his property should be divided at his death. It is the duty of the court to see whether any particular evidence is relevant or tends to prove the point at issue, and the court should reject in a will contest, where the question involved is the testamentary capacity of the testator, all evidence not tending to throw any light upon that question and which could only mislead the jury. (*Pierce* v. *Pierce,* 38 Mich. 412; 1 Wigmore on Evidence, p. 329; 11 Am. & Eng. Ency. of Law,—2d ed.—p. 501, and cases there cited.) This is in accord with the rule laid down by this court in *Cheney* v. *Goldy, supra.*

It is also insisted that the deceased, Floto, could not write English, and that this fact contradicts the testimony of witness Billig in stating that the deceased wrote out the particulars as to the will in English. We attach little importance to this contention. Deceased was a German, and the testimony tends to show that he could write English to some extent. All the facts on this point were fairly presented to the jury for their consideration.

The contention is also made that the testimony with reference to the revocation of the order for the first wife's tombstone should have been admitted. That episode took place about seven years before the will in question was executed. Undue influence, in order to avoid a will, must be directly connected with its execution and operate at the time it is made. (*Guild* v. *Hull,* 127 Ill. 523; *Wickes* v. *Walden,* 228 id. 56.) There was no evidence in the record, except the bare fact that appellee was in the house and may have been present in the room at the time the will in question was drawn up by the witness Billig, that could tend in the slightest degree to show undue influence at or near the time the will was executed. All the facts, except this one, which would have any tendency to show undue influence, occurred months before the will was executed. We do not think there was any evidence in the record which, with all reasonable inferences and intendments fairly to be drawn therefrom, tended to prove that the testator was, at the time of the making of the will, unduly influenced in its execution. (*Woodman* v. *Illinois Trust and Savings Bank,* 211 Ill. 578; *Wickes* v. *Walden, supra.*) This being so, the instructions on this subject offered by appellant were properly refused.

Appellant also complains of the giving of some ten instructions for appellee, on the ground that they give undue prominence to certain facts. Several of these instructions told the jury that certain statements and letters of the deceased were only received in evidence as bearing on the condition of his mind, and as not proving or tending to prove the truth of such statements or letters. The letters and statements were plainly admissible only for the purpose stated in the instructions, and they do not come within the rule laid down in *Weston* v. *Teufel,* 213 Ill. 291. When evidence is admitted for restricted purposes, it is proper for the court to instruct the jury as to the limits within which such evidence may be considered. (*Carter* v. *Carter,* 152 Ill. 434; *People* v. *Casey,* 231 id. 261.) We do not

think any of these instructions come within the reasoning of the criticism of *Weston* v. *Teufel, supra,* or *Petefish* v. *Becker,* 176 Ill. 448, as claimed by appellant. Although not strictly accurate in some particulars, yet, considered together with the instructions given for appellant on the same subject, we do not believe the jury were misled to the prejudice of appellant.

Counsel for appellant claim that several of the instructions given for appellee repeated the same facts and the law applicable thereto, and thereby made such facts unduly prominent. The refusal to give a proper instruction can work no hardship when the substance is embodied in an instruction that is given, and some of these instructions might properly have been refused on that ground. However, we do not think such undue prominence was given by such repetitions as to mislead the jury or cause a reversal.

The great weight of the evidence upholds the verdict of the jury, and we find no substantial error in the record. The decree of the circuit court will accordingly be affirmed.

*Decree affirmed.*