## DITTON ET AL. *v.* HART ET AL.

[No. 21,464. Filed February 2, 1911.]

1. PLEADING.—*Complaint.—Parties.—Capacities in which Sued.— Caption.—Allegations.*—The capacity in which a party is sued is determined, not from the caption of the complaint, but by the allegations thereof. p. 184.

2. APPEAL.—*Theory.—Parties.—Capacities.*—Where a party to an action was not named in its representative capacity in the caption of the complaint, but the allegations of the complaint showed that such party was sued in such capacity, it is proper to name such party in its representative capacity in the assignment of errors on appeal, the Supreme Court adhering to the theory of the case adopted in the trial court. p. 184.

3. APPEAL.—*Supreme Court Rules.—Briefs.* — Where appellants have made a good-faith effort to comply with the Supreme Court rules in the preparation of their brief, such brief will be held sufficient. p. 184.

4. NEW TRIAL.—*Joint Motion for.—Several Exceptions to Rulings.* —Where the rulings made a ground for a joint motion for a new trial were severally excepted to by each of the appellants and for the same reasons, such rulings are properly assigned in such motion for a new trial, and the joint exception to the overruling of such motion properly presents the questions under a joint assignment of errors on appeal. p. 185.

5. WILLS.—*Testamentary Capacity.—Comprehending Legal Effect of Will.—Instructions.*—Instructions, in a will contest, that the testatrix, to have sufficient mental capacity to execute a valid will, must be able to "understand the nature and legal effect of her will," and "to understand all the provisions of said will standing alone and each with respect to the other," are erroneous, the mental requirement being too high. p. 186.

6. WILLS.—*Testamentary Capacity.—Comprehending Provisions of Will.—Instructions.*—An instruction that in determining the tes-

Ditton *v.* Hart—175 Ind. 181.

tamentary capacity of the testatrix the jury might "consider whether she had sufficient mental capacity to comprehend" certain items of her will, is erroneous, the standard being too high. p. 188.

7. WILLS.—*Undue Influence.—Former Wills.—Consideration of.— Instructions.*—An instruction that the jury in determining the question of undue influence in a will contest might "consider whether some ten or fifteen years before her death the testatrix had executed at intervals of several months apart, three wills," is erroneous, since undue influence, to invalidate a will, must be directly connected with its execution, and operate at the time the will is made. p. 188.

8. WILLS.—*Testamentary Capacity.—Undue Influence.—Declarations and Writings of Testatrix.—Evidence.*—Declarations of a testatrix not made at the time of the execution of the will are admissible on the question of testamentary capacity, but not on the question of undue influence; and this rule applies to letters, other wills and other writings of the testatrix. p. 189.

9. WILLS.—*Testamentary Capacity.—Undue Influence.—Declarations.—Evidence.*—Declarations of testatrix in harmony with her will are admissible to sustain such will. p. 190.

10. WILLS.—*Construction.—Testamentary Capacity.—Undue Influence.—Duty of Court.*—In a will contest the proper construction of the will is not necessarily involved; but where it is material in determining the questions of testamentary capacity and undue influence it is the duty of the court, on proper request, to inform the jury as to the correct meaning of the provisions thereof. p. 190.

11. WILLS.—*Devises.—Division of.—Conclusiveness of.—Partition.* —Where a will devised certain undivided land to the children of testatrix, and provided for a division of such land "on a fair and equitable basis as to value," the executor to act as arbiter, and the division made by a majority to be conclusive, the division was required to be "fair and equitable," and collusion or injustice therein would render the division voidable at the instance of the defrauded party, who could compel a division by a partition proceeding. p. 192.

12. CONTRACTS.—*Arbitration.—Ousting Jurisdiction of Courts.*— Parties cannot, even by contract, in advance of a dispute, make the decision of a named person final and conclusive, thereby ousting the jurisdiction of the courts. p. 193.

13. APPEAL.—*Refusal to Give Instructions.—Prejudicial Error.— Briefs.*—Appellants' brief should present enough of the record to show that they were prejudiced in their rights by the failure of the court to give a refused instruction. p. 193.

14. EVIDENCE.—*Opinion.—Basis of.—Experts.*—An expert may not

give his opinion upon his recollection and construction of the evidence, but must base it upon facts assumed to have been proved, which facts must be given to him as the foundation upon which to base his opinion. p. 194.

15. EVIDENCE.—*Opinion.*—*Experts.*—A hypothetical question propounded to an expert must be so framed as to give no occasion for the drawing of a conclusion from the whole or any part of the evidence in the case. p. 194.

16. WILLS.— *Testamentary Capacity.*— *Experts.*— *Assuming Portions of Will and Letter in Hypothetical Question.*—In a will contest, it is improper to assume as a part of a hypothetical question propounded to a physician certain parts of the will in question and also a letter written to the testatrix, the facts contained in such provisions and in such letter being the proper matters to assume in such question. p. 194.

17. APPEAL.—*Instructions.* — *Interrogatories.* — *Harmful Error.* — Incorrect instructions and erroneously admitted evidence will be considered prejudicial, where the answers to the interrogatories to the jury fail to show them harmless. p. 195.

From Warren Circuit Court; *James T. Saunders,* Judge.

Action by Abigail H. Hart and others against Minerva H. Ditton and others. From a judgment for plaintiffs, defendants appeal. *Reversed.*

*Kumler & Gaylord, McCabe & McCabe* and *Charles M. Snyder,* for appellants.

*Stuart, Hammond & Simms, Fraser & Isham, Meade S. Hays* and *W. B. Durborow,* for appellees.

MONKS, J.—This action was brought by appellees against appellants to contest the will of Jane Hawkins, deceased, after probate, on the alleged grounds that the testatrix was of unsound mind when the will was executed, that the will was procured by undue influence, and that it was unduly executed.

A trial of said cause resulted in a general verdict in favor of appellees, and over a motion for a new trial final judgment was rendered setting aside said will. The only errors assigned and not waived call in question the action of the court in overruling appellants' joint motion for a new trial.

It is insisted, however, by appellees that this appeal must

be dismissed, because the LaFayette Loan and Trust Company was made a defendant in the court below in its individual capacity, and is not named in that capacity as one of the appellants in this court, but is named as a party appellant in the assignment of errors as the "executor of the last will and testament of Jane Hawkins, deceased, when it was not a party defendant in that capacity in the court below."

It is true that said loan and trust company was not named in the title of the complaint in this case as executor of said will, but the character in which any one is made a party must be determined from the allegations in the complaint, and not by its title. *Marion Bond Co.* v. *Mexican Coffee, etc., Co.* (1903), 160 Ind. 558, 563; *Williams* v. *Dougherty* (1906), 37 Ind. App. 449; *Funk* v. *Davis* (1885), 103 Ind. 281, 285, 286; *Beers* v. *Shannon* (1878), 73 N. Y. 292, 297; *Tate* v. *Shackelford* (1854), 24 Ala. 510, 60 Am. Dec. 488.

It clearly appears from the allegations in the body of the complaint that said loan and trust company was made a party as the executor of said will, and it appears from an instruction given at the request of appellees, and from other papers in the case, that the case was tried in the court below upon that theory, said theory must therefore be adhered to in this court on appeal. *Oölitic Stone Co.* v. *Ridge* (1908), 169 Ind. 639, and cases cited; *Conrad* v. *Hansen* (1908), 171 Ind. 43, 49; *Studabaker* v. *Faylor* (1908), 170 Ind. 498, 507, 127 Am. St. 396.

It is insisted by appellants that the court erred in giving instructions eight, nine, eleven and fourteen, requested by appellees, and in refusing to give instructions thirty-one, thirty-two, thirty-four and thirty-five, requested by appellants.

Appellees insist that "no question is presented on the evidence or instructions, for the reason that appellants in their brief have not complied with clause five of rule twenty-two of this court." While appellants' brief may not be a model in complying with the require-

ments of said rule, it is clear from their first brief and reply brief that they have made a good-faith effort to comply with said rule, and that they have substantially complied therewith as to the questions we shall determine. This is sufficient. *Howard* v. *Adkins* (1906), 167 Ind. 184, 186, and cases cited; *Stamets* v. *Mitchenor* (1906), 165 Ind. 672, 675; *Teeple* v. *State, ex rel.* (1908), 171 Ind. 268, 271; *Pomeroy* v. *Wimer* (1906), 167 Ind. 440, 450; *Ellison* v. *Branstrator* (1910), 45 Ind. App. 307; *Indiana Union Traction Co.* v. *Heller* (1909), 44 Ind. App. 385; *Simplex, etc., Appliance Co.* v. *Western, etc., Belting Co.* (1909), 173 Ind. 1.

Appellees further insist that "no question is presented as to instructions given or refused, because appellants' exceptions to the giving and the refusing to give instructions were separate and several as to each appellant, and could not therefore be properly assigned as causes for a new trial in appellants' joint motion for a new trial, to the overruling of which the exceptions were joint and not several." It is true that the motion for a new trial was the joint motion of all the appellants, and that they jointly excepted to the overruling thereof, and that appellants each severally excepted to the giving and refusing to give the instructions complained of, but it does not follow that no question is presented thereby. It is well settled that a joint assignment of errors, or a joint motion for a new trial, to be sufficient, must be founded on a ruling that is erroneous as to all who join therein. The motion for a new trial in this case was the joint motion of appellants, and called in question the action of the trial court in giving and refusing to give certain instructions. Although appellants took their exceptions to the giving and refusing to give instructions severally, they were all entitled to join in a motion for a new trial, because the court by a single action ruled against all the appellants, and all the appellants took the same exception to the giving and refusing to give the same instructions and they were all affected in the same way by the ruling of the

court on said instructions and had a common interest in the result sought by the motion for a new trial. They had the same right to question, by a joint motion for a new trial, the correctness of the action of the trial court in giving and refusing to give said instructions, as if the exceptions had been joint instead of several as to each appellant. *Stamets* v. *Mitchenor, supra.* See, also, *Whitesell* v. *Strickler* (1907), 167 Ind. 602, 609, 119 Am. St. 524.

In instruction eight, four mental requisites are stated in the disjunctive by the use of the word "or," that informed the jury that lack of either requirement named, at the time of the execution of the will, if shown by the evidence, would render the testatrix "at that time a person of unsound mind, not having sufficient mental capacity to execute a will; and if the jury so found, the verdict should be for plaintiff."

One of the requisites, the lack of which said instruction informed the jury would render the testatrix of unsound mind, was "sufficient mental capacity to understand the nature and legal effect of her will."

Said instruction nine informed the jury that if the testatrix "did not have sufficient mental capacity to understand all the provisions of said will standing alone, and each with respect to the other, and if the evidence so shows, then Jane Hawkins should be regarded as a person of unsound mind at the time of the execution of the will, and as not having sufficient mental capacity to execute said will, and if the jury so find the verdict should be for plaintiff." It was not necessary that the testatrix should have comprehended the provisions of her will in their legal form. *Barricklow* v. *Stewart* (1904), 163 Ind. 438, 440; *Harrison* v. *Rowan* (1820), 3 Wash. C. C. 580, 585, Fed. Cas. No. 6,141; *Trish* v. *Newell* (1871), 62 Ill. 196, 14 Am. Rep. 79, 84, 85; *O'Brien* v. *Spalding* (1897), 102 Ga. 490, 31 S. E. 100, 66 Am. St. 202, 212; *Kischman* v. *Scott* (1901), 166 Mo. 214, 228, 65 S. W. 1031; *Couch* v. *Gentry* (1892), 113 Mo. 248, 256, 20 S. W. 890;

*Young* v. *Ridinbaugh* (1878), 67 Mo. 574; *Haven* v. *Mason* (1905), 78 Conn. 410, 62 Atl. 615, 3 L. R. A. (N. S.) 172; note to *Slaughter* v. *Heath* (1907), 27 L. R. A. (N. S.) 1, 20, 21.

It was said in the case of *Harrison* v. *Rowan, supra,* as to a testator's capacity, that "he must, in the language of the law, have a sound and disposing mind and memory. In other words, he ought to be capable of making his will, with an understanding of the nature of the business in which he is engaged—a recollection of the property he means to dispose of—of the persons who are the objects of his bounty, and the manner in which it is to be distributed between them. It is not necessary that he should view his will with the eye of a lawyer, and comprehend its provisions in their legal form. It is sufficient, if he has such a mind and memory as will enable him to understand the elements of which it is composed—the disposition of his property in its simple forms. It is the business of the testator to dictate the purposes of his mind; and of the scrivener to express them in legal form."

It is said in the case of *Couch* v. *Gentry, supra,* on page 256: " Again it is doubtless true that the testator should have a reasonable understanding as to how he desires his will to take effect, but to say he must understand the scope and bearing of the provisions of the will as prepared by his adviser, and this instruction is subject to such a construction, is another thing—a thing as to which legal advisers and eminent men are sometimes mistaken."

In the case of *Kischman* v. *Scott, supra,* the court said on page 228: " And while it is true that the testator should have reasonably understood as to how he desired his will to take effect, it was not necessary that he should have understood the scope and bearing of the provisions of the will as prepared by his legal adviser."

It is evident that said instructions eight and nine were erroneous, for the reason that they required too high a standard of mental capacity.

Instruction eleven, given upon the question of the mental

capacity of the testatrix to make a will, informed the jury
that it might "consider whether she had sufficient
6. mental capacity to comprehend the provisions" of
items seven, eight and nine of her will, setting out
what appellees claim to be the legal effect of said items.
What we have already said and the authorities cited in
regard to instructions eight and nine—that it is not necessary
that the testatrix comprehend the provisions of her will as
prepared by the scrivener—apply with equal force to instruc-
tion eleven.

This court said in the case of *Barricklow* v. *Stewart, supra:*
"Erroneous views of the law of descents or of wills enter-
tained by a testator generally constitute very slight grounds,
if any, for an inference of unsoundness of mind. Even
gentlemen, learned in the law of these subjects, and possess-
ing unquestionable ability to comprehend and apply it,
often differ in opinion or fall into error. It is not strange,
therefore, that persons destitute of professional learning
should have mistaken notions in regard to the effect of
certain words in the creation of estates, and the legal con-
sequences of inconsistent devises or bequests of property."

This is well shown in the case before us, where counsel
for appellants and counsel for appellees differ widely as to
the meaning of the provisions of the will in controversy,
especially as to items seven, eight and nine, mentioned in
instruction eleven.

Instruction fourteen, given at the request of appellees,
was on the question of undue influence. A number of facts
were stated therein, which, if proved, the jury was
7. informed, might be considered, "together with all the
other facts and circumstances, if any, shown in evi-
dence bearing upon the question as to the execution of the
will, * * * and if from all of such evidence, if any, the
jury believe that the execution of said will was procured by
undue influence, then the jury should find for the plaintiff
in this case, and that said will is invalid."

In said instruction the jury was informed, among many other things, that upon the question of undue influence it might " consider whether, some ten or fifteen years before her death, testatrix had executed, at intervals of several months apart, three wills," the contents of which were stated in said instruction. The disposition made by the testatrix of her property in each of said wills was different from that made by the will in controversy in this case. Undue influence in order to make void a will must be directly connected with its execution, and operate at the time it is made. *Floto* v. *Floto* (1908), 233 Ill. 605, 613, 84 N. E. 712; *Wickes* v. *Walden* (1907), 228 Ill. 56, 71, 81 N. E. 798, and cases cited; *Guild* v. *Hull* (1889), 127 Ill. 523, 532, 20 N. E. 665, and cases cited.

Declarations of the testator not made at the time of the execution of the will in controversy were admissible in evidence as tending to show the mental capacity of the testator at the time the will was executed, but were not admissible as evidence of undue influence. *Hayes* v. *West* (1871), 37 Ind. 21; *Todd* v. *Fenton* (1879), 66 Ind. 25, 32; *Vanvalkenberg* v. *Vanvalkenberg* (1883), 90 Ind. 433, 438; *Conway* v. *Vizzard* (1890), 122 Ind. 266, 268; *Westfall* v. *Wait* (1905), 165 Ind. 353, 360, 361; *Throckmorton* v. *Holt* (1901), 180 U. S. 552, 570, 581, 21 Sup. Ct. 474, 45 L. Ed. 663; *Hobson* v. *Moorman* (1905), 115 Tenn. 73, 90 S. W. 152, 3 L. R. A. (N. S.) 749, and cases cited; *Ginter* v. *Ginter* (1909), 79 Kan. 721, 101 Pac. 634, 23 L. R. A. (N. S.) 1024; *Waterman* v. *Whitney* (1854), 11 N. Y. 157, 62 Am. Dec. 71, 74, and note; *In re Kennedy's Estate* (1910), 159 Mich. 548, 124 N. W. 516, 28 L. R. A. (N. S.) 417, 134 Am. St. 743; *Floto* v. *Floto, supra; Wickes* v. *Walden, supra; Cheney* v. *Goldy* (1907), 225 Ill. 394, 401, 80 N. E. 289, 116 Am. St. 145; *Compher* v. *Browning* (1906), 219 Ill. 429, 440, 441, 76 N. E. 678, 109 Am. St. 346, and cases cited; *Waters* v. *Waters* (1906), 222 Ill. 26, 35, 36, 78 N. E. 1, 113 Am. St. 359, and cases cited. This rule also applies to

written declarations of the testator, as letters written by him and other wills executed by him. *Floto* v. *Floto, supra,* pp. 611, 612, and cases cited; *Hobson* v. *Moorman, supra; Marx* v. *McGlynn* (1882), 88 N. Y. 357, 374, 375; *In re Lawler* (1903), 86 App. Div. 527, 83 N. Y. Supp. 726.

It is held, however, that declarations of the testator in harmony with the provisions of the will in controversy are admissible to sustain it. *Compher* v. *Browning, supra,* p. 441, and cases cited; *Waters* v. *Waters, supra,* pp. 35, 36, and cases cited; *Cheney* v. *Goldy, supra,* p. 401; *Harp* v. *Parr* (1897), 168 Ill. 459, 470, 48 N. E. 113; note C to *In re Colbert's Estate* (1904), 107 Am. St. 439, 467, 468.

Other objections are urged against said instructions, but as the court erred in giving them for the reasons stated, they are not considered.

Instructions thirty-one, thirty-two, thirty-four and thirty-five, requested by appellants and refused by the court, concern the proper construction of the will in controversy. Appellees insist that these instructions were properly refused, because " in an action to contest a will no question as to its construction is presented, unless all its provisions are invalid."

It is true that in an action to contest a will, the proper construction of the will is not necessarily involved. In this case, however, by instructions eleven and fourteen, given by the court at the request of appellees, the court instructed the jury that upon the questions of testamentary capacity and undue influence it might consider "the nature of the will and its provisions;" and in the hypothetical questions put by appellees to their medical experts, the construction of items seven, eight and nine of said will was involved, and in the hypothetical question put to one of their medical experts, they assume that item eight of said will "required two of the heirs to join with this arbiter, the LaFayette Loan and Trust Company, to enforce a partition, and if any of the two heirs agreed with the LaFayette Loan and Trust Company,

then the partition or division shall be made in accordance with that agreement, whatsoever it shall be;  *  *  *  that is to say, that, in the division of this land, if Mrs. Hart and Mrs. Bond should join with the LaFayette Loan and Trust Company, or it should join with them, and divide the land to the detriment and injury of Mrs. Jewell and Mrs. Ditton, it would have to stand, and contrariwise, if Mrs. Ditton and Mrs. Jewell entered into collusion with the LaFayette Loan and Trust Company, and set off property of much less value to Mrs. Hart and Mrs. Bond, and the LaFayette Loan and Trust Company agree to it, it would be final and conclusive, and forever after that would stand."

Counsel for appellees in their brief say that " in a will contest, contradictions and ambiguities, and also the injustice of its provisions with respect to the heirs, may be considered as bearing upon the question of testamentary capacity and undue influence," and that incongruities and inconsistencies between the seventh and ninth items of the will were, under the authorities, proper matters for the consideration of the jury.

If in such action the provisions of the will can be considered by the jury for the purposes named, as claimed by counsel for appellees, how can it determine as to the matters named, unless it knows the meaning and legal effect of the provisions of the will which were claimed to be unjust, ambiguous, contradictory, etc.  It is clear that it was material and important that the jury should have been informed as to the correct meaning of items seven, eight and nine of said will, about which there was such a wide difference of opinion between opposing counsel.  The construction of the will is a legal question, and the court must inform the jury, on request properly made, as to the correct meaning of any provision of the will when it comes in question and is material to the issues to be determined.  11 Ency. Pl. and Pr. 81, 82; *State* v. *Patterson* (1878), 68 Me. 473, 474–476; *Magee* v. *McNeil* (1866), 41 Miss. 17, 90 Am. Dec. 354, 357, 358; *Sartor* v.

*Sartor* (1861), 39 Miss. 760, 770; *Taylor* v. *Kelly* (1857), 31 Ala. 59, 63 Am. Dec. 150, 157; *Bruck* v. *Tucker* (1871), 42 Cal. 346, 355, 356; *Warner* v. *Miltenberger* (1863), 21 Md. 264, 83 Am. Dec. 573, 576; *Watford* v. *Forester* (1881), 66 Ga. 738; *Willson* v. *Whitfield* (1868), 38 Ga. 269, 283; *Green* v. *Collins* (1845), 28 N. C. 139, 143; *Underhill* v. *Vanderboort* (1874), 56 N. Y. 242, 247. No such question as this was presented in *Clearspring Tp.* v. *Blough* (1909), 173 Ind. 15, cited by appellees, and that case is not in point here.

By item seven of said will the testatrix devised to her four daughters about four thousand five hundred acres of real estate during their natural lives. Item eight, which provides for the partition thereof, is as follows: " For the purpose of bringing about a quick, fair and equitable distribution of said real estate among my daughters or their children, I direct that each of my said daughters, either in person or through representatives chosen by them, or the legal representatives of their children, shall meet with my executor herein named and make division of said real estate on a fair and equitable basis as to value, said executor to act as arbiter, and the allotments so made, when approved by a majority of said children or their representatives, including my said executor, shall stand and be binding on each of said daughters and their children as a final and conclusive division of said real estate."

The LaFayette Loan and Trust Company was by said will made the executor thereof. It will be observed that said item does not make any partition made thereunder final and conclusive, except one that " is made on a fair and equitable basis as to value." A partition, therefore, that is unfair and unjust, made by collusion to the detriment and injury of any one or more of said devisees, would not be final and conclusive as assumed in said hypothetical question, but could, in a proceeding brought by a party interested, in a court having jurisdiction, be set aside, and a partition compelled that would be fair and equitable as required by said

item. *Pray* v. *Belt* (1828), 1 Pet. (U. S.) 670, 7 L. Ed. 309; *Moore* v. *Harper* (1886), 27 W. Va. 362; *American Board, etc.,* v. *Ferry* (1883), 15 Fed. 696.

It has been held by this court that parties cannot, even by contract, in advance of any dispute, oust the jurisdiction of the courts by providing that the decision of any person named shall be final and conclusive. *Supreme Council, etc.,* v. *Forsinger* (1890), 125 Ind. 52, 55, 56, 9 L. R. A. 501, 21 Am. St. 196, and cases cited.

Instruction thirty-four stated the proper construction of the eighth item of the will, and the rights of the parties to compel partition according to the provisions thereof.

Instructions thirty-one and thirty-two, as to the proper construction of items seven and nine of the will, were correct, and should have been given.

Conceding, without deciding, that the legal propositions stated in instruction thirty-five, as to the construction of the will, are correct, we are unable to say, from the parts of the record set out in appellants' brief, that appellants were prejudiced in any of their substantial rights by the refusal of the court to give them.

It is next claimed that the court erred in permitting two medical witnesses of appellees to testify, in answer to hypothetical questions propounded to them, that the testatrix was of unsound mind at the time she executed the will in controversy. The seventh and ninth items of the will in controversy were read as a part of the hypothetical question propounded by appellees to one of their medical experts, Doctor Sterne, and a letter written by Mr. Ball, the person who wrote the will, to the testatrix, was also read as a part of the hypothetical question. The objection of appellants to the question was, in effect, that an expert witness is not allowed to give his opinion upon the construction he may give the portions of the will read to him or upon the letter written by Mr. Ball.

It is settled that an expert witness will not be allowed to

give his opinion upon his recollection and construction of the evidence in the case. He must base his opinion upon his own testimony or upon facts assumed to have been proved, which facts must be given to him as the foundation upon which to base his opinion. *Rush* v. *Megee* (1871), 36 Ind. 69, 73, 75–77, and cases cited; *Bishop* v. *Spining* (1871), 38 Ind. 143; *Guetig* v. *State* (1879), 66 Ind. 94, 104, 32 Am. Rep. 99, and cases cited; *Burns* v. *Barenfield* (1882), 84 Ind. 43, 47–49; *Elliott* v. *Russell* (1884), 92 Ind. 526, 530, 531; *Craig* v. *Noblesville, etc., Gravel Road Co.* (1884), 98 Ind. 109; *Louisville, etc., R. Co.* v. *Falvey* (1886), 104 Ind. 409, 418–422, and authorities cited.

When an expert is asked to give his opinion upon a hypothetical question, the question must be so framed as to give no occasion mentally to draw his own conclusions from the whole evidence or any part thereof. *McMechen* v. *McMechen* (1881), 17 W. Va. 683, 692–698, 41 Am. Rep. 682; *Russ* v. *Wabash, etc., R. Co.* (1892), 112 Mo. 45, 20 S. W. 472, 18 L. R. A. 823, 825, 826; *Commercial, etc., Trust Co.* v. *Gray* (1892), 150 Pa. St. 255, 260, 24 Atl. 640.

It was said in the case last cited, that " a belief respecting the sanity of the testator, founded on a provision of the will, is neither satisfactory nor competent evidence." The case of *Rush* v. *Megee, supra,* quotes with approval the following from an article published in the Law Review in 1871: "It is not the province of an expert witness to draw inferences of fact from evidence, but simply to declare his opinion upon a known or hypothetical state of facts."

This court said in *Louisville, etc., R. Co.* v. *Falvey, supra,* page 421: " To this question there is at least one valid objection. This objection is, that it assumes, as one of the facts, the opinion of another physician that Miss Falvey, the appellee, was not suffering from a lesion of the spine. It is not proper in asking hypothetical questions to incor-

porate in them the opinions of other expert witnesses. An opinion of an expert witness cannot be based upon opinions expressed by other experts. Facts, and not opinions, must be assumed in the questions. If it were otherwise, opinions might be built upon opinions of experts, and the substantial facts driven out of the case. An opinion cannot rest, in whole or in part, upon other opinions, but must rest upon fact."

The proper construction of the seventh and ninth items of the will in controversy, read to said expert, involved a legal question, one which was in dispute and about which opposing counsel differ. The will and the letter were read in evidence, but it was the facts proved by the letter and the parts of the will included in said question that should have been assumed as facts in stating the hypothetical question to the expert witness, and not the evidence of such facts, as was done in this case. In answer to said question the expert witness drew his own inferences and conclusions from said items of the will and said letter. His opinion in answer to the question, so far as said items of the will and letter were concerned, was based on his construction thereof. It is evident, under the rule applicable to such questions and the authorities cited, that the court erred in permitting the medical expert to answer said question.

The hypothetical question asked Doctor Wetherill, appellees' medical expert, was objectionable for like reasons.

Other objections are urged against said hypothetical questions, but as they were objectionable for the reasons given, it is not necessary to consider them.

There is nothing in the answers of the jury to the interrogatories showing that the errors of the court in giving or in refusing to give said instructions, or the errors of the court in overruling the objections of appellants to the hypothetical questions, were harmless.

Other questions are argued in the briefs, but as they may not arise upon another trial they are not considered.

It follows from what we have said, that the court erred in overruling appellants' motion for a new trial. Judgment reversed, with instructions to sustain appellants' motion for a new trial, and for further proceedings not inconsistent with this opinion.

Morris, J., dissents.